WILL, Senior District Judge.
Juanita and Henry Montoya filed several successive bankruptcy petitions, first under Chapter 11 and later under Chapter 7. They contend that assessments against them for federal income taxes due more than three years before their current bankruptcy filing are not entitled to priority and should be discharged. The bankruptcy and district courts both disagreed, finding that the three year window for collecting the taxes under 11 U.S.C. §§ 523(a)(1)(A) and 507(a)(7)(A)(i) had been suspended by events in the bankruptcy court leaving the government without the requisite time to pursue its claims. The Montoyas appeal. We affirm.
I.
The parties have stipulated to the relevant facts. On March 11, 1983, the Monto-yas filed for bankruptcy under Chapter 11. Pursuant to an order of the bankruptcy court, the IRS was permitted to make assessments against the Montoyas for unpaid *555 1982 and 1983 income taxes. The bankruptcy court confirmed a Chapter 11 reorganization plan on January 14, 1985, which included a provision that the IRS would be paid the full amount of the tax assessments.
On March 6,1985, the Montoyas objected to the IRS assessments. The bankruptcy court sustained the objection on April 4, 1985 and disallowed the IRS claims because the government had failed to file a response. The IRS filed a motion to reconsider stating that the government had not been properly served with the Montoyas’ objection. The court entered an agreed order on April 23, 1986 reinstating the IRS claims. On August 11, 1987, the Chapter 11 bankruptcy estate was closed leaving the IRS claims outstanding.
On February 15, 1989, the Montoyas again filed for bankruptcy, this time under Chapter 7. That case was dismissed on July 12, 1989. Two days later they filed their pending Chapter 7 petition. The Mon-toyas then brought this action contending that the IRS assessments against them for the unpaid 1982 and 1983 taxes should be discharged. The bankruptcy court granted summary judgment in favor of the government, and the district court affirmed. Both courts held that the government had not been given the time allowed under provisions of the Internal Revenue and Bankruptcy Codes to collect the unpaid taxes, and therefore the debts were nondischargeable.
II.
Under Chapter 7 of the Bankruptcy Code a debtor may, with certain exceptions, be discharged from all debts incurred before a bankruptcy petition is filed. 11 U.S.C. § 727(b). Exceptions are found in § 523 which renders nondischargeable debts which are entitled to priority under § 507 of the Code. 11 U.S.C. § 523(a)(1)(A).[1] Section 507 mandates that taxes due within three years of the bankruptcy petition are not dischargeable. 11 U.S.C. § 507(a)(7)(A)(i).[2] Therefore, absent the Chapter 11 proceeding the Montoyas’ tax debt would have been discharged because the last date on which the their tax returns could have been filed fell outside the three-year nondischargeability or what the parties have called the “look-back” period.
The Chapter 11 and first Chapter 7 proceedings, however, affect this calculation. Under § 362 of the Bankruptcy Code, an automatic stay is imposed on all creditors’ actions against the debtor until the time of confirmation, so that between March 11, 1983 and January 14, 1985, and February 15, 1989 and July 12, 1989, the IRS was prohibited from collecting any taxes. Section 108(c) of the Code extends the time creditors have to collect claims that have been stayed by a bankruptcy proceeding.[3] *556 This section provides that an unexpired nonbankruptcy statute of limitations continues for 30 days after the stay has been lifted or until the limitations period has expired, whichever is later.
Parallel provisions to § 108(c) are found in § 6503 of the Internal Revenue Code.[4] The IRS generally has three years to assess and six years to collect taxes. 26 U.S.C. §§ 6501 and 6502. These limitations periods are tolled when the taxpayer's assets are tied up in a court proceeding and for an additional six months. 26 U.S.C. § 6503(b). Section 6503(h) specifically suspends the time for assessing or collecting taxes when the IRS is precluded from acting because of a pending bankruptcy case.
Under the analysis of both the bankruptcy and district courts, the IRS claims were frozen for significant periods between the Chapter 11 filing and the present Chapter 7 case, though each computed those periods slightly differently. The bankruptcy court concluded that, in addition to the time the automatic stay was in place, the IRS was also prevented from pursuing its claims between the confirmation of the Chapter 11 plan and the date of the Montoyas’ objection because it found that the IRS was bound by the provisions of the confirmed plan. The bankruptcy court also concluded that the statute of limitations was suspended from the date the Montoyas’ objection was sustained until the agreed order was entered. The district court chose not to reach the question of whether the limitations period was suspended during the time the plan was in effect, but agreed with the bankruptcy court that the look-back period was tolled during the time the IRS claims were disallowed. Under either court’s analysis, the IRS did not have three years and six months to collect.
III.
The Montoyas do not dispute that calculation of the lookback period in the pending Chapter 7 case does not include the time the automatic stay was in place during the two earlier bankruptcy proceedings. That principle is consistent with the reasoning in Brickley v. United States (In re Brickley), 70 B.R. 113 (Bankr. 9th Cir.BAP 1986), and numerous subsequent cases. See, for example, Molina v. United States (In re Molina), 99 B.R. 792 (Bankr.S.D.Ohio 1988); United States v. Deitz (In re Deitz), 116 B.R. 792 (Bankr.D.Colo.1990); In re Quinlan, 107 B.R. 300 (Bankr.D.Colo.1989).
Brickley involved serial filings under Chapter 13 and Chapter 7. The debtors initially filed under Chapter 13 during which time the IRS filed proofs of taxes owed within three years of the filing. The Chapter 13 proceedings took almost three years to complete, and when the Chapter 13 case ended the debtors filed for bankruptcy under Chapter 7. The appellate bankruptcy panel rejected the debtors’ contention that the IRS claims were discharged concluding that “to follow the Debtors’ argument would render the extension of the statute of limitations in Section 108(c) without meaning, since tax collecta-bility is obviously useless if the tax debt has been discharged.” 70 B.R. at 115. The court recognized that such a result would sanction tax avoidance schemes since debtors could simply file a subsequent bankruptcy petition after three years had passed and deliberately avoid paying their tax debts. Id. at 116. Cf. In re *557 Official Committee of Unsecured Creditors of White Farm Equipment Co., 943 F.2d 752, 757 (7th Cir.1991), cert. denied, — U.S. -, 112 S.Ct. 1292, 117 L.Ed.2d 515 (1992) (Section 507 should be interpreted “so as to ensure that the delicate balance of the priority and discharge scheme established by the Code is not skewed by the unanticipated development of serial Chapter 11 filings.”).
The sole issue in this appeal, given that it is undisputed that the look-back period does not include the time the automatic stay was in effect, is whether this period may also be tolled because of any other proceedings in the bankruptcy court. The Montoyas contend that the district court erred in finding that the tolling period included more than the time that the IRS claims were stayed. They argue that their tax liability should be discharged since three years and six months after the Chapter 11 plan was confirmed would have expired on July 14, 1988.
The government responds that the IRS was only free to collect for two periods before the second Chapter 7 filing: between August 11, 1987, when the Chapter 11 case was closed, and February 15, 1989, when the first Chapter 7 petition was filed, and from July 12, 1989 until July 14, 1989, the period between the two Chapter 7 filings. Prior to August 11, 1987, the IRS argues that it was barred from collecting by the automatic stay and then by the provisions of the confirmed plan. Section 1141 of the Bankruptcy Code provides that the provisions of a confirmed plan are binding on both the debtor and creditors. 11 U.S.C. § 1141(a). See also Paul v. Monts, 906 F.2d 1468, 1471 (10th Cir.1990). Between April 4, 1985 and April 23, 1986, the IRS argues that it was also prevented from acting when its claims were disallowed by the bankruptcy court.
We, as did the district court, find it unnecessary to consider whether the look-back period does not include any times beyond those when IRS claims were disallowed. Exclusion of this time period from calculation of the look-back period, along with the time the automatic stay was in effect, means that IRS did not have three years and six months to collect the taxes.[5]
The Montoyas argue that there is no statutory provision in either the Bankruptcy or Internal Revenue Codes that contemplates a tolling period due to a debtor’s objection to IRS claims. They contend that suspending the applicable statute of limitations during any period beyond that when the automatic stay is in place would erode the three year rule. We disagree. Nothing in § 108 or § 6503 restricts any tolling of nonbankruptcy statutes of limitations to the time a creditor is barred from acting because of the provisions of the automatic stay. Section 6503 allows for tolling because of limits imposed by another court preceding or specifically a bankruptcy case without limiting this to a period in which the IRS is unable to act because of a stay. Similarly, § 108(c) suspends nonbankruptcy statutes of limitations until the stay is lifted or the statute of limitations itself expires.
Excluding the time the bankruptcy court sustained the Montoya’s objection to the IRS assessments from the look-back period is consistent with the applicable statutory scheme. The tolling provisions of § 6503 are given effect in the context of a bankruptcy proceeding by § 108(c) of the Bankruptcy Code. Brickley, 70 B.R. at 115. Section 108(c) implicitly incorporates the limitations period of § 6503 by preserving nonbankruptcy statutes of limitations which have not yet expired. The relevant legislative history of § 108(c) is also clear on this point:
In the case of Federal tax liabilities, the Internal Revenue Code suspends the statute of limitations on a tax liability of a taxpayer from running while his assets are in the control or custody of a court and for 6 months thereafter.... The amendment applies this rule in a title 11 proceeding. Accordingly, the statute of *558 limitations on collection of a nondis-chargeable Federal tax liability of a debt- or will resume running after 6 months following the end of the period during which the debtor’s assets are in the control or custody of the bankruptcy court. This rule will provide the Internal Revenue Service with adequate time to collect nondischargeable taxes following the end of the title 11 proceedings.
S.Rep. No. 989, 95th Cong., 2nd Sess. 30-31 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5816-5817.
It would be similarly inconsistent with the intent of § 108(c) to fail to exclude from the look-back period the time the IRS claims were disallowed as to charge the IRS for the time the automatic stay was in place. The IRS was as equally barred from acting when the disallowance was in place as it was when its claims were stayed. The Montoyas argue that, since during the time their objection was sustained the IRS was able to apply over-payments for other tax years to the tax debts, this demonstrates that the IRS was not barred from collecting the owed income taxes. These offsets, however, do not indicate that the IRS had power to act contrary to a court ruling on its claims and directly collect the Montoyas’ back taxes. There is no doubt that in the face of a court order disallowing the tax assessments, the IRS was prohibited from continuing to assert its claims.
Tolling the look-back period during the time the IRS claims were disallowed ensures that proceedings in the bankruptcy court do not prevent the IRS from having adequate time to bring an action against delinquent taxpayers. The disallowance, along with the automatic stay, acted to bar the IRS from collecting. Because the IRS has not yet had 3 years and 6 months to collect the assessments, the Montoya’s tax liability is not discharged.
Affirmed.

. Section 523 provides in part:
(a) a discharge under sections 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
(1) for a tax or customs duty—
(A) of the kind and for the periods specified in section 507(a)(2) or 507(a)(7) of this title, whether or not a claim for such tax has been allowed: ....

. Section 507(a)(7)(A)(i) provides:
(a) The following expenses and claims have priority in the following order:
******
(7) Seventh, allowed unsecured claims of governmental units, only to the extent that such claims are for—
(A) a tax on or measured by income or gross receipts—
(i) for taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition; ...

.Section 108(c) provides in pertinent part:
Except as provided in section 524 of this title, if applicable nonbankruptcy law ... fixes a period for commencing or continuing a civil action ... and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of—
(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
(2) 30 days after notice of the termination or expiration of the stay....

. Section 6503 provides in-part:
(b) Assets of taxpayer in control or custody of court. — The period of limitations on collection after assessment prescribed in section 6502 shall be suspended for the period the assets of the taxpayer are in the control or custody of the court in any proceeding before any court of the United States or of any State or of the District of Columbia, and for 6 months thereafter.
******
(h) Cases under Title 11 of the United States Code. — The running of the period of limitations provided in section 6501 or 6502 on the making of assessments or collection shall, in a case under title 11 of the United States Code, be suspended for the period during which the Secretary is prohibited by reason of such case from making the assessment or from collecting and—
(1) for assessment, 60 days thereafter, and
(2) for collection, 6 months thereafter.

. As the district court calculated, tolling the look-back period when the IRS claims were stayed and disallowed left the IRS with only 1111 days to pursue its claims, whereas a full three years and six months is 1277 days.