**In re John EYSENBACH, Debtor.**

**Bankruptcy No. 93–12139 B.**

United States Bankruptcy Court,
W.D. New York.

July 26, 1994.

Relin & Goldstein (Raymond C. Stilwell, of counsel), Rochester, NY, for Citibank (New York State).

Avery M. Ellis, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, DC, for IRS.

Jeffrey Freedman, P.C. (Kenneth Hiller, of counsel), Buffalo, NY, for debtor.

CARL L. BUCKI, Bankruptcy Judge.

In this chapter 13 proceeding, an unsecured creditor challenges the priority which the Internal Revenue Service claims with respect to income taxes due for the 1988 and 1989 calendar years. At issue is whether the pendency of a prior bankruptcy proceeding served to toll the three year and 240 day priority periods as set forth in 11 U.S.C. § 507(a)(7)(A).

John Eysenbach filed his present petition for relief under Chapter 13 of the Bankruptcy Code on July 9, 1993, a date less than two months after the dismissal of a prior proceeding in Chapter 13. As confirmed by this Court on November 4, 1993, the Debtor's current plan contemplates that allowed priority tax claims be paid in full and that general unsecured claims receive an eleven percent distribution. Shortly after confirmation, the Internal Revenue Service timely filed a proof of priority tax claim in the amount of $15,-122.68. This sum included a claim for 1988 income taxes plus interest in the combined amount of $5,380.57 and a claim for 1989 income taxes plus interest in the combined amount of $8,742.11. The Internal Revenue Service assessed the 1988 taxes on June 19, 1989, and the 1989 taxes on November 19, 1990.

Citibank, one of the unsecured creditors, now objects to the allowance of the 1988 and 1989 taxes as priority obligations. Quite simply, it contends that 11 U.S.C. § 507(a)(7) generally accords priority to income taxes only if the tax became due within three years of the filing of the bankruptcy petition or if the tax was assessed within 240 days of the filing date. The latter of the taxes at issue became due on April 15, 1990, a date slightly more than three years prior to the filing of the present bankruptcy petition. Similarly, both assessment dates occurred considerably more than 240 days before the filing. Absent some tolling of the applicable periods, therefore, neither of these taxes would appear to be entitled to treatment as a priority claim.

In a chapter 13 proceeding, disallowance of priority status will always impact significantly upon a taxing entity. Section 1322(a)(2) of the Bankruptcy Code mandates that a plan "provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507. . . ." To the extent that the tax claim does not receive priority status, it is to be entitled only to the same distribution as other unsecured creditors.

At the initial hearing on this matter, the debtor stated that he took no position with respect to the tax objection. Section 1325(a)(4) of the Bankruptcy Code permits the Court to confirm only those plans that enable unsecured creditors to receive as much as in a liquidation under Chapter 7. This test generally requires a Chapter 13 debtor to pay into the plan a sum that is at least equal to the value of his or her non-exempt assets. In the present instance, these assets have a value that exceeds the IRS claim. As a consequence, the mere disallowance of priority status would not reduce the amount to be paid into the plan. If granted, Citibank's motion would cause the

Internal Revenue Service to receive only the same percentage distribution as general unsecured creditors rather than the 100% distribution contemplated by the debtor's plan. The debtor assumed, therefore, that the effect of Citibank's objection would be to increase the percentage distribution to unsecured creditors at the expense of the government's claim and that the denial of priority status would not otherwise affect his plan obligations.

Following the initial hearing on Citibank's motion, the Court became concerned that the debtor's assumptions might not be correct and that a possible outcome of this proceeding might be to increase the plan contributions at the expense of the debtor. Accordingly, the Court invited reargument, which was heard on June 14, 1994.[1]

■ The Internal Revenue Service contends that the time limits of section 507(a)(7)(A) are subject to tolling under two theories: either statutorily, pursuant to 11 U.S.C. § 108(c) and 26 U.S.C. § 6503(b) and (h); or equitably, pursuant to powers granted under 11 U.S.C. § 105. Courts must act with great caution when asked to abrogate statutory limits that are otherwise clear. For the reasons set forth herein, this Court concludes that in the present circumstance, tolling is permitted for limited purposes only and may not impede the rights of recovery which would otherwise be granted to general unsecured creditors.

This Court rejects the notion that section 108(c) of the Bankruptcy Code, when read in conjunction with section 6503 of the Internal Revenue Code, demonstrates an intent to toll the three year priority period of 11 U.S.C. § 507(a)(7)(A)(i). Although section 108(c) provides generally for an extension of time to commence or continue a civil action, its application is expressly limited to those time periods that are established by "applicable *nonbankruptcy* law, an order entered in a *nonbankruptcy* proceeding, or an agreement." As a provision of the Bankruptcy Code, section 507 is obviously not subject to the tolling

powers of section 108(c). Subdivisions b and h of 26 U.S.C. § 6503 provide that the pendency of a bankruptcy proceeding may operate to extend the periods of limitations established under sections 6501 and 6502 of the Internal Revenue Code with respect to collection activity outside of bankruptcy. However, neither of these sections is implicated in the present motion. In short, the referenced statutory provisions in 11 U.S.C. § 108 and 26 U.S.C. § 6503 simply do not deal with the time limits set forth in section 507(a)(7) of the Bankruptcy Code.

■ The Internal Revenue Service suggests that even if 11 U.S.C. § 108 and 26 U.S.C. § 6503 were not applicable, these sections demonstrate a Congressional intent to toll statutory limitations other than those referenced in these sections. The Bankruptcy Court is not a legislative body. Had Congress wished specifically to set tolling limitations with respect to section 507(a)(7), it could have inserted an appropriate statutory provision into the Bankruptcy Code. While this Court fully recognizes that considerations of equity may, in appropriate circumstances, justify the tolling of a statutory limitation, the evidence of Congressional intent is not so clearly demonstrated as to mandate tolling in every instance in which a bankruptcy proceeding was previously pending. Quite to the contrary, the equities here present indicate a sound rationale for application of the statutory language.

■ Bankruptcy is not a one way street designed solely to benefit debtors to the detriment of creditors. By reason of their filing, debtors commit to fulfill certain obligations. Creditors, including tax claimants like the Internal Revenue Service, acquire rights that would be difficult to attain outside of bankruptcy. For example, a Chapter 13 debtor must disclose detailed financial information, including the identification of assets and all sources of income. Debtors voluntarily dedicate their earnings to payment of debts and may subject their income to wage deduction orders. Inherent in a Chapter 13

---

1. At one point, it appeared that this dispute might be rendered moot due to the pendency of the trustee's motion to dismiss this Chapter 13 proceeding. Although it is still unclear whether

the debtor will ever fulfill his plan, it appears that he has satisfied the trustee's most immediate concerns. As the case is still pending, Citibank's motion is properly to be decided at this time.

plan is the commitment to satisfy tax claims in full without forcing the Internal Revenue Service to expend resources on its usual enforcement options. But the filing of a Chapter 13 petition does not eliminate the need for creditor diligence. Although creditors must surely modify the focus of their collection activity when a bankruptcy petition is filed, bankruptcy will never excuse the termination of creditor involvement. Collection activity must change, not end. After the bankruptcy filing, creditors enjoy easy access to information regarding plan compliance. In the event that it fails to receive distributions as contemplated in the plan, a creditor may exercise a number of options, ranging from consultation with the trustee to the initiation of a motion to convert.

To the extent that Congress enacted 11 U.S.C. § 507(a)(7) to preserve for the Internal Revenue Service certain minimal periods of time for collection activity prior to discharge, the intervention of a prior bankruptcy does not necessarily violate that intention. In the present case, the Internal Revenue Service could easily have exercised those rights which the Bankruptcy Code allows it to exercise during the pendency of Chapter 13. In particular, it might have sought conversion, thereby fully preserving the nondischargeable character of its claim. While one may also speculate that the Congressional intent was more broadly based, this is hardly one of those "rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982); *United States v. Ron Pair Enterprises,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989).[2]

This is not to say that the Bankruptcy Code might not, at times, become a forum for attempted abuse. When the possibility of such abuse is present, however, the Bank-

ruptcy Code grants to this Court ample means to preserve the legitimacy of the bankruptcy process. Among these means are the equitable powers of section 105, which the Internal Revenue Service now proposes as authority for tolling in the present case.

■ Section 105 of the Bankruptcy Code provides that this Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [Title 11]." As a court of equity, this Court possesses general equitable powers which it may invoke in furtherance of the various provisions of the Bankruptcy Code. See *United States v. Energy Resources Co.,* 495 U.S. 545, 110 S.Ct. 2139, 109 L.Ed.2d 580 (1990). The Internal Revenue Service argues that the Bankruptcy Court may exercise these equitable powers to toll the time limits for determining the priority status of tax obligations where collection may have been delayed due to the pendency of a prior proceeding in bankruptcy. This Court wholeheartedly agrees. As stated by the Tenth Circuit in *In re Richards,* 994 F.2d 763, 765 (1993), "11 U.S.C. § 105(a) is broad enough to permit the Bankruptcy Court's order to suspend" the time periods that are set forth in section 507(a)(7). That the court may exercise this authority, however, does not settle whether such authority should be exercised in any particular circumstance. As a court of equity, this Court must administer equity and must accordingly look to safeguard the rights of all parties.

■ The present facts differ from each of the cases cited by the Internal Revenue Service in that the objecting party is a creditor and not the debtor. No one suggests that Citibank's motion is designed to benefit the debtor or to reward his gamesmanship, if any. Rather, the equitable considerations involve the respective rights of two creditors,

---

**2.** This Court disagrees, therefore, with the recent decision of the Ninth Circuit in *In re West,* 5 F.3d 423 (1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1830, 128 L.Ed.2d 459 (1994), which concluded that a "literal interpretation of § 108(c) would frustrate the Bankruptcy Code's intricate scheme for the payment of tax claims." *Id.* at 426. Rather, it would seem equally consistent with the "Code's intricate scheme for payment of tax claims" to assume that this scheme contemplated the use of bankruptcy rights as part of the activity which the IRS was expected to undertake during the time periods set forth in section 507(a)(7). At a minimum, the literal provisions of the Code are not demonstrably at odds with any unequivocal indication of Congressional intent.

each of whom legitimately seeks to maximize its recovery from the limited assets of the debtor's estate. The issue, therefore, is not whether a debtor may misuse the bankruptcy process to disrupt tax collection activity, but whether an innocent creditor must lose the benefit of statutory provisions that define the limits of tax priorities.

Citibank has committed no act, wrongful or otherwise, which might justify extinguishment of its rights as against the Internal Revenue Service. To the contrary, the equities disfavor the Internal Revenue Service, which did nothing to protect its rights during the pendency of the debtor's prior Chapter 13 case. Despite long delays in case administration,[3] the IRS chose not to appear at any time during those prior proceedings. Nor did it move to convert the case, a step that would have preserved its priority to recover from the debtor's assets. As noted by the Supreme Court in *National Savings Bank v. Creswell*, 100 U.S. (10 Otto) 630, 643, 25 L.Ed. 713 (1880), "where one of two innocent persons must suffer a loss, it should fall on him who, by reasonable diligence or care, could have protected himself, rather than on him who could not." Instead, the Internal Revenue Service slept on its rights in the prior case. It will not be permitted now to transform the consequences of that failure into a greater loss to general unsecured creditors. The rule is well summarized by the maxim: "vigilantibus non dormientibus jura subveniunt."[4]

Nothing in this opinion is intended to determine rights as between the Internal Revenue Service and the debtor. It may well be that as between these parties, the prior bankruptcy will toll the time limitations of section 507(a)(7).[5] For the moment, however, such issue is not now before the Court, and no decision is rendered with respect to the respective rights of the IRS and Mr. Eysenbach.

■ For the reasons stated above, Citibank's objection is sustained. For purposes of distributions pursuant to the Chapter 13 plan, the Internal Revenue Service shall be deemed to possess a general unsecured claim for income taxes due for the periods ending December 31, 1988, and December 31, 1989. This determination is without prejudice, however, to all other rights of the Internal Revenue Service, including its right to move to dismiss this case on account of an inability to perform that portion of the plan which promises full payment to priority tax claimants. The entitlement of the Internal Revenue Service to priority status as against the debtor will be considered when such a motion is properly presented.

So ordered.

---

3. The debtor filed his first bankruptcy petition on December 28, 1990. Within a few months of the confirmation of the Chapter 13 plan on February 12, 1991, the debtor began to default in his plan payments. The Trustee then moved to dismiss the case by motion docketed on September 26, 1991. Hearings on that motion were held on October 2, October 11, and November 25 of 1991, and on February 10, 1992. An initial Order of Dismissal was entered on February 14, 1992, only to be followed by the debtor's motion to reinstate. Although this Court would reinstate the plan on March 19, 1992, the trustee renewed his motion for dismissal in May of 1993. The case was finally dismissed by Order dated May 19, 1993.

4. "Equity aids the vigilant, not those sleeping on their rights."

5. Thus, for example, the present decision would not preclude (but does not dictate) a finding of nondischargeability in the event that this case were to be converted to Chapter 7.