**In the Matter of Mark E. PASTULA and Pamela Pastula, Debtors.**

**Bankruptcy No. 95–49865–G.**

United States Bankruptcy Court, E.D. Michigan, Southern Division.

Jan. 7, 1997.

Terri M. Weik, Birmingham, MI, David Einstandig, Thav, Gross, Steinway & Bennett, P.C., Birmingham, MI, for Debtors.

Joan J. Fahlgren, Special Assistant U.S. Attorney, Detroit, MI.

David Ruskin, Chapter 13 Trustee, Southfield, MI.

### MEMORANDUM OPINION FINDING DEBTORS' TAX DEBT DISCHARGEABLE

RAY REYNOLDS GRAVES, Bankruptcy Judge.

#### Introduction

This matter comes before this court upon the objection of debtors Mark E. Pastula and Pamela Pastula (debtors) to a particular proof of claim filed by the Internal Revenue Service (IRS). At issue is whether the pendency of debtors prior Chapter 13 bankruptcy served to suspend the running of the three year look-back period within which the IRS must collect overdue taxes under 11 U.S.C. § 507(a)(7)(A)(i) and 11 U.S.C. § 523. The debtors first bankruptcy case was dismissed after the expiration of the three year period. The proof of claim filed by the IRS in the instant Chapter 13 bankruptcy proceeding includes unpaid tax liabilities due and owing prior to the three year look-back period. It is the inclusion of this tax claim

that is the gravamen of the dispute before this court.

In May of 1992, the debtors filed their 1989, 1990 and 1991 federal income tax returns. The debtors' taxes for the aforementioned years were assessed during the months of May and June of 1992 and amounted to more than $11,000.00 in tax liabilities and penalties.

## Facts

On July 21, 1992 the debtors filed for bankruptcy protection pursuant to Title 11, Chapter 13 of the Bankruptcy Code,[1] (the "first bankruptcy case"). Under the plan, the debtors were ordered to submit 60 monthly payments of $546.01 to the Trustee which would have eventually totaled $33,840.60. In the first bankruptcy case, the debtors regarded the IRS as a creditor entitled to a $10,000 priority claim and a general unsecured claim of $3,297.66.[2] In that same month, three years later, on July 26, 1995 the debtor's first bankruptcy case was dismissed. Upon dismissal, the debtors had only paid $11,195.28 of the total claim of $33,840.60.

By September 15, 1995 the debtors had filed a subsequent Chapter 13 bankruptcy petition and plan (the "second bankruptcy case"). In the second bankruptcy case, the debtors regarded the IRS as a creditor entitled to a priority claim amounting to $11,837.00 for tax years 1992, 1993 and 1994; and an unsecured claim amounting to $20,386.00 for tax years 1989, 1990 and 1991. On December 11, 1995 the IRS filed a proof of claim in the second bankruptcy case asserting a priority claim of $34,747.01 for tax years 1989 through 1994. The 1989 through 1991 tax liability represents $11,059.18 of the asserted priority claim in the case at bar, exclusive of interest (the "disputed claim").

On January 5, 1996 the debtors filed an objection to the IRS's December 11, 1995 proof of claim asserting that the disputed claim is dischargeable and does not fall under the purview of 11 U.S.C. § 523(a)(7)(B) of the Bankruptcy Code. Therefore, Debtors argue that the claim should be relegated to a Class VIII general unsecured claim status pursuant to 11 U.S.C. § 507(a)(8)(A)(i) of the Bankruptcy Code. Subsequently, on February 15, 1996 the IRS reduced the debtors 1994 tax liability from $10,000.00 to $251.00,[3] this reduction has no impact upon the case *sub judice*. Moreover, on that same date, the debtors second bankruptcy case was confirmed. The Order Confirming Plan indicated that the IRS is to be regarded by the debtors as having an unsecured priority claim in the amount of $11,837.00 and that any surplus amount determined to be a priority claim will not be discharged and will survive the plan.

The IRS seeks to determine whether the three year look-back period of both § 523(a)(7)(B) and § 507(a)(8)(A)(i) is tolled during the pendency of debtors' first bankruptcy case with regard to the disputed claim, when the debtors' second bankruptcy case was filed after the expiration of the three year period. It is the IRS' contention that Internal Revenue Code § 6503(b) and (h) in cooperation with Bankruptcy Code § 108(c), serve to toll and extend the priority period beyond the three year period set forth in 11 U.S.C. § 507, thus, the disputed claim is not dischargeable.

## Discussion

■ The interpretation of Bankruptcy Code Sections 11 U.S.C. 108(c), 507(a)(8)(A)(i), and 523(a)(7)(B) along with Internal Revenue Code (I.R.C.) § 6503(b) and (h), is the issue of primary dispute. A three year priority period for collecting delinquent taxes is established pursuant to 11 U.S.C. § 507(a)(8)(A)(i). After the expiration of the three year priority period, taxes remaining uncollected are discharged under

---

1. Case number 92–09185–G.

2. The Debtors, in their Second Bankruptcy Case number 95 49865–G, currently dispute the IRS's contention that it properly filed a proof of claim in the First Bankruptcy Case. The IRS alleges that it's records indicate "that a Proof of Claim for $13,033.17 in priority taxes and $3,297.66 for general unsecured penalties was prepared on November 16, 1992 and acknowledged by the Court on November, 1992." However, there is nothing in the record to support this assertion.

3. There is no explanation in the record for this reduction in tax liability.

§ 523(a)(7)(B), which sets forth a three year period of limitation on tax collection. Both periods run concurrently. These provisions together, provide for the discharge of tax obligations where the last date on which the tax return could have been filed, lies outside the three years of the filing date for bankruptcy. *In re Brickley,* 70 B.R. 113, 114 (9th Cir. BAP 1986). Often working in conjunction with the aforementioned Code provisions is § 108(c) which suspends certain nonbankruptcy statutes of limitation on actions against a debtor engaged in a bankruptcy proceeding.

In the same vein, section 6503(b) and (h) of the Internal Revenue Code (I.R.C.) suspends the limitation period contained in § 6502 (a *non-bankruptcy* limitation period), within which the IRS must collect overdue tax obligations, against a debtor in bankruptcy, during the pendency of the debtors bankruptcy case and for six months after the debtor's Bankruptcy case is dismissed or otherwise ended. *In re West,* 5 F.3d 423, 424 (9th Cir.1993).

## I.

The IRS first argues that this court should incorporate the meaning of the tolling provision contained in I.R.C. § 6503(b) or (h) into the Bankruptcy Code tolling provision of § 108(c), resulting in the suspension of the three year priority period during the pendency of the debtors' first bankruptcy case.[4]

The relevant portions of the Bankruptcy Code state as follows:

**108. Extension of Time** ...

(c) Except as provided in § 524 of this title, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor, or against an individual with respect to which such individual is protected under § 1201 or § 1301 of this title, and such period has not expired before the date of the filing of the

petition, then such period does not expire until the later of—

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2) 30 days after notice of the termination or expiration of the stay under §§ 362, 922, 1201, or 1301 of this title, as the case may be, with respect to such claim.

**507. Priorities**

(a) The following expenses and claims have priority in the following order ...

(8) Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for—

(A) a tax on or measured by income or gross receipts—

(i) for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition;

(ii) assessed within 240 days, plus any time plus 30 days during which an offer in compromise with respect to such tax that was made within 240 days after such assessment was pending, before the date of the filing of the petition; or ...

**523. Exceptions to discharge.**

(a) A discharge under §§ 727, 1141, 1228[a], 1288(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

.        .        .        .        .

(7) to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than a tax penalty—

.        .        .        .

(B) imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition;

The bankruptcy related provisions at issue of the I.R.C. are 26 U.S.C. 6503(b) and (h) which state in relevant part:

---

**4.** The IRS primarily rely upon the decisions of *In re Brickley, supra; In re West, supra;* and *In re*

*Ralph E. Taylor,* 81 F.3d 20 (3rd Cir.1996).

6503. **Suspension of running of period of limitation** ...

**(b) Assets of taxpayer in control or custody of court.**—The period of limitations on collection after assessment prescribed in § 6502 shall be suspended for the period the assets of the taxpayer are in the control or custody of the court in any proceeding before any court of the United States or of any State or of the District of Columbia, and for 6 months thereafter.

**(h) Cases under title 11 of the United States Code**—The running of the period of limitations provided in §§ 6501 or 6502 on the making of assessments or collection shall, in a case under title 11 of the United States Code, be suspended for the period during which the Secretary is prohibited by reason of such case from making the assessment or from collecting and—

(1) from assessment, 60 days thereafter, and

(2) for collection, 6 months thereafter.

### II.

In the alternative, the IRS argues that although the relevant Code provisions do not explicitly state that the look-back periods are suspended during a prior bankruptcy case, but rather the court must go beyond the plain language of the statutes in order to comply with the Legislative intent underlying the Bankruptcy Code. The IRS maintains that the legislative history of the Bankruptcy Code implies that Congress intended for the IRS to have a full and unimpeded three years within which to collect due and owing taxes.

### III.

The Debtors, on the other hand, maintain that the three year period has continuously run against the government even during their first bankruptcy case, thus rendering the tax obligations for the years 1989 through 1991 dischargeable. The Debtors set forth three primary arguments as to why this court should conclude that the three year priority period of § 507(a)(8)(A)(i), and the three year discharge period of § 523(a)(7)(B), are not suspended by the ap-plication of 26 U.S.C. § 6503(b) & (h) by way of 11 U.S.C. § 108(c):

1) First, debtors assert that this court must apply the plain and unambiguous language of the Bankruptcy Code and enforce it as written.

2) That even if the plain language of the Bankruptcy Code is ambiguous, there is no legislative history relating § 108(c) or § 6503(h) to § 507(a)(8)(A)(i) or § 523(a)(7)(B).

3) Finally, that the IRS incorrectly assumed that the debtors' first bankruptcy case hindered tax collection activities and should therefore have to bear the burden of that misconception.

### A. Plain Language Statutory Interpretation

The Debtors maintain that the language contained in the relevant statutes is plain on it's face and therefore should be enforced as written. In support of this contention, debtors direct the Court's attention to the case of *In re Gore*, 182 B.R. 293 (Bankr.N.D.Ala. 1995). This case is similar to the case *sub judice* in that the IRS urged the U.S. Court of Appeals for the Eleventh Circuit to read the meaning of I.R.C. § 6503 into Bankruptcy Code § 108(c) in order to suspend the running of the look-back periods under § 523(a)(7)(B) and § 507(a)(7)(A)(i).

The *Gore* court refused to accept such an interpretation, adhering closely to the "plain language rule", which stands for the proposition that where the statute is plain on its face and is free from ambiguity, the court is to enforce the statute. *In re Burns*, 887 F.2d 1541 (11th Cir.1989). The ordinary meaning of the written code is to be given effect. As long as it is comprehendible and consistent, there is no need for a court to look beyond the plain language of the statute, unless, of course, such enforcement would be directly at odds with the *manifest* intention of Congress and produce absurd results. *In re Ron Pair Enterprises*, 828 F.2d 367 (6th Cir.1987), Judgment Reversed by 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989), *In re Macko*, 193 B.R. 72 (Bankr.M.D.Fla. 1996), *In re Turner*, 182 B.R. 317 (Bankr. N.D.Ala.1995).

In this case, the Debtors assert that Section 523(a)(7)(B) mandate the discharge of a debtor from an obligation to pay a tax liability imposed with respect to a transaction or event that occurred before three years of the filing of the bankruptcy petition, thus, the IRS claim must fail, as it relates back to an assessment which occurred more than three years before the beginning of the second bankruptcy case [5] (1995).

Moreover, debtors assert that § 507(a)(8)(A)(i) provides that income tax obligations are only entitled to a three year period of priority status and that where a bankruptcy petition is filed after the three year period the tax debt is treated as a general unsecured Class VIII Claim, dischargeable under § 523(a)(7)(B).

Under a literal reading of §§ 523 and 507, where a debtor files a bankruptcy petition more than three years after the date upon which the debtors income tax return was filed, the tax obligation is dischargeable. *In re Brickley, supra.* However, where the debtor files a bankruptcy petition prior to the expiration of the priority period, the pendency of the bankruptcy case has been held by a considerable number of courts to suspend the running of the three year period.[6] Courts following this line of jurisprudence tend to be immersed in considerations of policy.

However, this court must decide the issues based upon the applicable law. The law upon which this matter rests is comprehensive, consistent and its enforcement would not be clearly at odds with the intention of Congress. *In re Ron Pair Enterprises, supra.*

■ Section 108(c) provides generally for an extension of time to commence or continue a civil action, its application is expressly limited to those time periods that are estab-

lished by "applicable nonbankruptcy law, an order entered in a non-bankruptcy proceeding, or an agreement." as provisions of the Bankruptcy Code, neither § 507 or § 523 are subject to the tolling powers of § 108(c). The Bankruptcy Code nor the I.R.C. serve to toll, suspend or extend the relevant periods because §§ 108(c) and 6503(h) do not apply to bankruptcy laws. *In re Macko, supra* at 75.

## A. Legislative History

■ The IRS urges this Court to look beyond the language of the statute to ascertain exactly what Congress intended when it enacted the Bankruptcy Code. The clearest indication of what Congress intended would be that very same language. Anything other than that would be an exercise in armchair legislating. The Bankruptcy Court is not a legislative body. Had Congress wished specifically to set tolling limitations with respect to the Bankruptcy Code provisions, it could have inserted the appropriate language. The "unambiguous language of the statutes involved is the clearest indicator of the intent of Congress. '[This court] can effect the will of Congress only by giving effect to the words of the statute'" *In re Gore, supra* at 301 (citing *In re Burns, supra* at 1544–1552).

Debtors also contend that even if there is ambiguity in the relevant statutes, there is no legislative history which indicates a concatenation between them. In support of this assertion, debtors reiterate their reliance upon *In re Gore.* In that case, the court addressed the "even if" argument and concluded that if Congress had intended to suspend the running of the three year period, it "could have easily made that intention clear." *In re Gore, supra* at 302.

The reality is that there is no explicit language in the legislative history of the

---

**5.** 1989—1991.

**6.** *See, In re Brickley, supra; Solito v. U.S.,* 172 B.R. 837 (W.D.La.1994); *In re Montoya,* 965 F.2d 554 (7th Cir.1992); *In re Bryant,* 120 B.R. 983 (Bankr.E.D.Ark.1990); *In re Taylor,* 81 F.3d 20 (3rd Cir.1996); *In re Gurney,* 192 B:R. 529 (9th Cir. BAP 1996); *In re Carter,* 74 B.R. 613 (Bankr.E.D.Pa.1987); *In re Baird,* 63 B.R. 60 (Bankr.W.D.Ky.1986); *In re Quinlan,* 107 B.R.

300 (Bankr.D.Colo.1989); *In re Molina,* 99 B.R. 792 (S.D.Ohio 1988); *In re Harris,* 167 B.R. 680 (Bankr.M.D.Fla.1994); *In re Reed,* 165 B.R. 959 (Bankr.N.D.Ga.1993); *In re Grogan,* 158 B.R. 197 (Bankr.E.D.Cal.1993); *In re Ross,* 130 B.R. 312 (Bankr.D.Neb.1991); *In re Bowling,* 147 B.R. 383 (Bankr.E.D.Va.1992); *In re Davidson,* 120 B.R. 777 (Bankr.D.N.J.1990); *In re West,* 5 F.3d 423 (9th Cir.1993).

Bankruptcy Code which purports to relate § 108(c) and § 6503(b) or (h) to either § 523 or § 507. Nor is there a manifest Congressional intent to that regard, but one of limiting the taxing authority to a three year period of priority and subsequent discharge.

The Eleventh Circuit, a strong advocate of the plain language rule, suggests that the three year period of section § 507 as applied in section § 523 is a strictly limited period given to the government to collect taxes and is not to be considered an accumulative amount of time for the IRS to spend freely so long as it acts within that cumulative time total" *In re Turner, supra,* 195 B.R. 476 at 495, *In re Haas,* 48 F.3d 1153 (11th Cir. 1995). The *Turner* court goes on to say that: "Congress did not intend to grant the IRS an absolute priority in bankruptcy for delinquent taxes .... The three year period of § 507 is not unlimited and was imposed upon the government to prevent an open ended priority due to a lack of diligence." *Turner, supra,* at 495.

In support of it's assertion of Congressional intent, the IRS submits the House Report accompanying the newly enacted bankruptcy Code which states in relevant part:

Under the present bankruptcy law, taxes that become legally due and owing within three years before the date of bankruptcy are granted priority in payment, and are made nondischargeable ... A taxing authority is given preferred treatment because it is an involuntary creditor of the debtor. It cannot choose its debtors, nor can it take security in advance of time that taxes become due. The Bankruptcy Act gives the taxing authority three years to pursue delinquent debtors before that three year period has run, the taxing authority is given a priority in order to compensate for its temporarily disadvantaged position.

There is an additional reason for the priority. Because it takes a taxing authority time to locate and pursue delinquent tax debtors, taxes are made nondischargeable if they become legally due and owing within three years before the bankruptcy. An open-ended discharge policy would provide an opportunity for tax evasion though bankruptcy, by permitting discharge of tax debts before a taxing authority has an opportunity to collect any taxes due.

H.R.Rep. No. 595, 95th Cong., 1st Sess at 189–190 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6150.

Although this excerpt may shed light on Congressional intent with respect to the Bankruptcy Code and tax collection activities, there is no indication that Congress intended for the three year look-back period to be suspended while a debtors prior bankruptcy proceeding is current. The only logical inference which can be drawn from said excerpt is that one half of Congress, viz., the House of Representatives, intended to limit the IRS to three years in which to collect due and owing taxes. This is an insufficient basis upon which to conclude that Congress intended to suspend the three year discharge period during the pendency of a debtors bankruptcy proceeding.

▆▆▆ Congress is presumed to be aware of pertinent, existing law when it passes legislation *Miles v. Apex Marine Corp.,* 498 U.S. 19, 30, 111 S.Ct. 317, 325, 112 L.Ed.2d 275 (1990). Therefore, Congressional silence on the issue can be reasonably said to indicate Legislative intent regarding the suspension of the relevant periods. When Congress knows how to say something and chooses not to, its silence is controlling. *In re Turner, supra,* (citing *BFP v. Resolution Trust Corp.,* 511 U.S. 531, 536–38, 114 S.Ct. 1757, 1761, 128 L.Ed.2d 556 (1994)). There either is no intention regarding this issue, or Congress as a comprehensive unit cannot reach agreement. In the face of such a possible Congressional standoff, this court cannot usurp the province of the Legislature and speak where the body charged with making such pronouncements is silent.

Considering the fact that the relevant Code provisions have remained virtually unmolested since its enactment (the Bankruptcy Code was enacted in 1978), one has to ask:

[if] Congress [intended] for the [I.R.C.] to amend the Bankruptcy Code even though the dischargeability provision of 11 U.S.C. § 523(a)(1)(A) and the three year priority formula of 11 U.S.C. § 507(a)(8)(A)(i) have

existed in practically the same unrestricted, unaltered form for almost 30 years? *In re Turner, supra,* at 483.

Furthermore, debtors contend that Congress was well aware of the issue of priority period tolling because it enacted the "offer in compromise" tolling provision to prevent debtors from using an offer in compromise to buy time. Under § 507(a)(a)(A)(ii), the running of the 240–day priority period tolls during the pendency of an offer in compromise between debtors and the IRS. Debtors cite *In re Aberl,* 159 B.R. 792 (Bankr.N.D.Ohio 1993), where the U.S. Court of Appeals for the Sixth Circuit concluded that oral negotiations between debtors and the IRS do not serve to suspend the running of the 240–day rule, where the statements of one of the parties could not be reasonably construed to actually be an offer in compromise of a tax liability dispute.

The court held that tax liabilities assessed against the Chapter 7 debtors more than 240 days before filing were not entitled to priority, where the IRS mistakenly construed the statements of the debtors to be an offer in compromise.

In the instant case, debtors argue that the Legislature was clearly aware of the tolling issue because it enacted § 507(a)(8)(A)(ii) after the relevant provisions, and therefore tacitly expressed it's intent by inaction in failing to specifically address the bankruptcy-tolling-tax debt discharge issue. Debtors argument is persuasive. Congress is presumed to be fully apprised of the state of the law at the time in which it enacts related legislation. *In re Turner, supra.*

### C. Hindrance of Tax Collection

Lastly, debtors argue that the IRS incorrectly assumed that the pendency of the first bankruptcy case hindered the IRS's tax collection efforts and should have to bear the burden of that mistake. Debtors assert that the IRS would have been no better off if the first bankruptcy case had not been filed, because of the plethora of rights and benefits provided to the IRS under the Chapter 13 plans. The IRS could easily have exercised the rights which the bankruptcy code permits it to employ during the pendency of the first bankruptcy case. It could have sought to convert debtor's Chapter 13 case to one under Chapter 7, thereby fully preserving the nondischargeable character of its claim.

The equities disfavor the IRS which did nothing to protect its claim during the pendency of the debtor's first bankruptcy case. The IRS did not make any objection regarding distribution during the first bankruptcy case, nor did it move to convert the case, a simple action that would have ensured the vitality of it's priority to recover from the debtor's assets. As noted by the Western District of New York in the case of *In re Eysenbach,* 170 B.R. 57 (Bankr.W.D.N.Y. 1994), quoting *National Savings Bank v. Creswell,* 100 U.S. 630, 25 L.Ed. 713 (1879) "Where one of two innocent persons must suffer a loss, it should fall on him who by reasonable diligence or care, could have protected himself, rather than on him who could not." *In re Eysenbach, supra,* at 61. The government will have to bear the burden of its either misconception or lack of diligence in prosecuting it's claim against the debtor's estate.

The outcome of this decision, is hardly one of those rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters. *In re Ron Pair Enterprises, supra.*

Due to the fact that this court finds debtors arguments persuasive, if equity agrees with the position taken by the IRS, then the IRS must provide a more compelling rationale for the suspension of the relevant periods. Absent some indication of misconduct, equity cannot be invoked by the court except to avoid some egregious travesty of justice which would inure to the government IRS as the result of nefarious conduct on the debtors part in filing or maintaining the first bankruptcy case. The arguments of the government do not indicate a sufficient basis in fact or law, for the application of equity. *In re Turner, supra,* at 492–493.

### Conclusion

For the aforementioned reasons this court hereby finds that the debtor's filing of the first bankruptcy case did not suspend the

running of the three year periods under both 523 and 507 by the incorporation of I.R.C. § 6503 through Bankruptcy Code § 108(c). Consequently, the tax debt is treated as a Class VIII claim and is thus dischargeable upon the filing of debtor's second bankruptcy case.

IT IS SO ORDERED.