In re Martin and Susan
COLLINS, Debtors.

Martin and Susan COLLINS, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Bankruptcy No. 96–5533–6B7.
Adversary No. 97–00117.

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

Dec. 16, 1997.

Kevin E. Mangum, Orlando, FL, for debtors.

Brian L. Schwalb, United States Department of Justice, Washington, DC, for United States of America.

## MEMORANDUM OPINION

ARTHUR B. BRISKMAN, Bankruptcy Judge.

This matter came before the Court on Cross–Summary Judgment Motion by the Internal Revenue Service, on behalf of the United States of America, seeking Partial Summary Judgment and Motion by the Plaintiffs/Debtors, Martin and Susan Collins, for Summary Judgment with respect to the Debtors' Complaint to Determine Dischargeability of Internal Revenue Service Debt pursuant to 11 U.S.C. § 523(a)(1).

Appearing before the Court were Kevin E. Mangum, counsel for Plaintiffs/Debtors, Martin and Susan Collins; and Brian L. Schwalb, United States Department of Justice, on behalf of the United States of America. After reviewing the pleadings, evidence, exhibits, and arguments of counsel, the Court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

The Debtors, Martin and Susan Collins ("Debtors") filed for relief under Chapter 13 of the Bankruptcy Code on May 28, 1991.

The Internal Revenue Service ("IRS"), on behalf of the United States of America, filed a proof of claim on November 11, 1991, for the Debtors' unpaid tax debts. The IRS asserted a secured claim in the amount of $44,840.61, an unsecured priority claim in the amount of $38,913.51, and an unsecured claim in the amount of $1,195.26, for a total claim of $84,949.38 for 1988 through 1990 delinquent taxes. The Debtors' 1990 tax debt was an unsecured priority claim in the amount of $21,989.50.

The Debtors' confirmed Chapter 13 plan provided for the IRS's $29,153.11 secured claim and $1,117.44 unsecured claim. The Debtors voluntarily dismissed their Chapter 13 case, after twenty-two months of filing for relief on April 13, 1993. No payments were made on their 1990 unsecured priority tax claim. Dismissal of their case was necessary in order to offer a compromise with the IRS on their entire tax liability.

The Debtors filed an offer in compromise with the IRS on December 10, 1993. The Debtors and the IRS were negotiating the terms of the repayment of Debtors' unpaid taxes and negotiations were pending until April 26, 1996. The offer in compromise was withdrawn by the Debtors after the IRS rejected their offer to settle their total tax liability in exchange for payment in the amount of $114,000.00

The Debtors filed their Chapter 7 voluntary petition on August 28, 1996. The Debtors filed an adversary proceeding against the United States of America seeking a determination of the dischargeability of Internal Revenue Service Debt pursuant to 11 U.S.C. § 523(a)(1). The 1990 taxes are the only taxes the IRS asserts as a priority tax subject to § 507 priority tax status and nondischargeable pursuant to § 523(a)(1)(A).

The Debtors' 1990 tax return was due on August 15, 1991, a date which is more than three years prior to the Debtors' current bankruptcy filing. The IRS contends that the three-year priority period of § 507(a)(8)(A)(i) was tolled during the pendency of the Debtors' prior bankruptcy case and for six months thereafter.[1]

---

1. The additional six-months is the determining factor in whether the tax claims are entitled to priority.

## CONCLUSIONS OF LAW

■ The issue to be determined, as a matter of law, is whether the dischargeability of Debtors' 1990 taxes pursuant to § 523(a)(1)(A), incorporating the three year priority period set forth in § 507(a)(8)(A)(i), was tolled during the pendency of the Debtors' prior Chapter 13 bankruptcy case.

Taxes are not discharged if they are "of the kind and for the periods specified in section ... 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed." 11 U.S.C. § 523(a)(1)(A). Thus, Congress has determined that the test of priority for distribution purposes in this instance controls dischargeability as well.

The relevant portion of § 507(a)(8)(A) grants a priority to income taxes "for a taxable year ending on or before the date of the filing of the petition ... after three years before the date of the filing of the petition." 11 U.S.C. § 507(a)(8)(A)(i).

The IRS is prevented from collecting tax claims against a debtor in bankruptcy in any manner other than through the proceedings because of the automatic stay. 11 U.S.C. § 362(a)(6).

A Debtor could file a petition under title 11 and allow the automatic stay to consume much or all of the three year period, and then dismiss the earlier case and file another petition to obtain a discharge from the Debtor's earlier uncollected tax liabilities. Such a result would be inconsistent with congressional intent behind § 507(a)(8) and to permit this scenario would substantially if not totally frustrate the IRS's collection of delinquent taxes.

To alter the unavoidable likelihood that the IRS would lose its priority tax period upon successive bankruptcy filings, the pertinent provisions in the Internal Revenue Code ("IRC") needs to be examined. The IRC provides for a statute of limitations for assessment of taxes. 26 U.S.C. § 6501(a). The IRC also provides for suspension of these periods for assessment and collection during a bankruptcy case. 26 U.S.C. §§ 6503(b)[2] and (h)[3]. In order to give meaning to the purpose behind the IRC provisions, courts have interpreted,[4] that Bankruptcy Code § 108(c) activates IRC § 6503 to suspends .the period for nondischargeable taxes and prevent these taxes from running during the course of a Debtor's bankruptcy and six months thereafter.

Section 108(c) of the Bankruptcy Code provides, in pertinent part:

[I]f applicable nonbankruptcy law ... fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor ... and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of—

(1) The end of such period, including any suspension of such period occurring on or after the commencement of the case; or

---

2. Section 6503 provides, in pertinent part:

(b) Assets of taxpayer in control or custody of court—The period of limitations on collection after ·the assessment prescribed in Section 6502 shall be suspended for the period the assets of the taxpayer are in the control or custody of the court in any proceeding before any court of the United States ... and for 6 months thereafter.                ⁰

3. Subsection (h) provides:

(h) Cases under title 11 of the United States Code.—The running of the period of limitations in section 6501 or 6502 on the making of assessments or collection shall, in a case under title 11 of the United States Code, be suspended for the period during which the secretary is prohibited by reason of such case from making the assessment or from collecting and—
      (1) for assessment, 60 days thereafter, and—
      (2) for collection, 6 months thereafter.

4. In re Waugh, 109 F.3d 489 (8th Cir.1997); In re Taylor, 81 F.3d 20 (3rd Cir.1996); In re West, 5 F.3d 423 (9th Cir.1993); In re Montoya, 965 F.2d 554 (7th Cir.1992); In re Brickley, 70 B.R. 113 (9th Cir. BAP 1986); But see In re Quenzer, 19 F.3d 163 (5th Cir.1993) (holding that 108(c) applied to nonbankruptcy law and nonbankruptcy proceedings); In re Nolan 205 B.R. 885 (Bankr. M.D.Tenn.1997); In re Pastula, 203 B.R. 941 (Bankr.E.D.Mich.1997); In re Macko, 193 B.R. 72 (Bankr.M.D.Fla.1996); In re Turner, 182 B.R. 317 (Bankr.N.D.Ala.1995).

(2) 30 days after notice of the termination or expiration of the stay under section 362, 922, 1202, or 1301 of this title, as the case may be, with respect to such claim.

11 U.S.C. § 108(c).

Legislative history demonstrates that a Debtor's pendency in bankruptcy suspends the priority "look-back" period in § 507. The relevant legislative history of § 108(c) is clear on this point:

> In the case of Federal tax liabilities, the Internal Revenue Code suspends the statute of limitations on a tax liability of a taxpayer from running while his assets are in the control or custody of a court and for 6 months thereafter.... The amendment applies this rule in a title 11 proceeding. Accordingly, the statute of limitations on collection of a nondischargeability Federal tax liability of a debtor will resume running after 6 months following the end of the period during which the debtor's assets are in the control or custody of the bankruptcy court. This rule will provide the Internal Revenue Service with adequate time to collect nondischargeable taxes following the end of the title 11 proceedings.

S.Rep. No. 989, 95th Cong., 2nd Sess. 30–31 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5816–5817.

All of the courts that have considered this issue have pointed out public policy considerations of tolling the time period in § 507(a)(8) and § 523. The three-year time period legislated as priority taxes would be meaningless upon successive bankruptcy filings of a Debtor. "[T]o follow the Debtor's argument would render the extension of the statute of limitations in Section 108(c) without meaning, since tax collectability is obviously useless if the tax debt has been discharged." *Brickley v. United States (In re Brickley),* 70 B.R. 113, 116 (9th Cir. BAP 1986).

The Eleventh Circuit Court of Appeals has not spoken directly on the issue of whether § 108(c) of the Bankruptcy Code activates IRC § 6503(h). As a result, the lower courts in the Eleventh Circuit are split on the determination of this issue. Courts in favor of the majority view are: *In re Cowart,* 199 B.R. 799 (Bankr.M.D.Fla.1996); *In re Shedd,* 190 B.R. 692 (Bankr.M.D.Fla.1996); *In re Teeslink,* 165 B.R. 708 (Bankr.S.D.Ga.1994); *In re Ringdahl,* 1991 WL 284105 (Bankr. M.D.Fla.1991); *In re Stoll,* 132 B.R. 782 (Bankr.N.D.Ga.1990). Contrary to this view are *In re Macko,* 193 B.R. 72 (Bankr. M.D.Fla.1996); *In re Turner,* 182 B.R. 317 (Bankr.N.D.Ala.1995); *In re Gore,* 182 B.R. 293 (Bankr.N.D.Ala.1995).

The minority of courts, lead by *Turner, supra,* have held that § 108(c)'s language is unambiguous and that strict adherence to the statutory plain meaning is required.[5] Thus, they find no reason to inquire into underlying congressional intent.

The starting point for interpreting a statute is the language of the statute itself. *Consumer Prod. Safety Comm'n v. GTE Sylvania,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). As a basic rule of statutory interpretation, "[c]ourts must assume that Congress intended the ordinary meaning of the words it used, and absent a clearly expressed legislative intent to the contrary, that language is generally dispositive." *Gonzalez v. McNary,* 980 F.2d 1418, 1420 (11th Cir.1993). "In rare and exceptional circumstances, [the Court] may decline to follow the plain meaning of a statute because overwhelming extrinsic evidence demonstrates a legislative intent contrary to the text's plain meaning." *Michetti Pipe Stringing Inc. v. Murphy Brothers Inc.,* 125 F.3d 1396, 1398 (11th Cir.1997).

The Court must depart from § 108(c)'s literal meaning "[b]ecause literal interpretation of § 108(c) would frustrate the Bankruptcy Code's intricate scheme for the payment of tax claims ..." *In re West,* 5 F.3d at

---

5. The *Turner* court enumerated several reasons for its holding that has been adopted by other courts. First, neither section 6503(h) nor section 108(c) mention the word 'discharge' or refer to section 523 or section 507, but instead specifically apply to nonbankruptcy period of limitations. *Turner,* 182 B.R. at 324. Second, that sections 523 and 507 are substantive sections which cannot be changed by a procedural statute of limitations such as Bankruptcy Code § 108(c) or IRC § 6503. *Id.* at 328. Third, that Congress had knowledge of nonbankruptcy tolling provisions, but chose to allow the IRS only a narrow opportunity to collect taxes in an extended priority period during a pendency of an offer in compromise pursuant to § 507(a)(8)(A)(ii). *Id.* at 328.

426. The legislative history reveals that Congress intended to give the government the benefit of certain time periods to pursue its collection efforts. *United States v. Richards (In re Richards)*, 994 F.2d 763, 765 (10th Cir.1993). More specifically, "[t]he tax collector ... should not lose taxes which he has not had reasonable time to collect or which the law restrained him from collecting." S.Rep. No. 989, 95th Cong., 2d Sess. 14 (1978), *reprinted* in 1978 U.S.C.C.A.N. 5787, 5800.[6]

The majority of courts recognize to interpret § 108(c) literally "would allow a Debtor to create an 'impenetrable refuge' by filing a bankruptcy petition, waiting for § 507(a)(7)'s [now (8)'s] priority periods to expire, and then dismissing the case and refilling shortly thereafter." *In re West*, 5 F.3d at 426. To hold that the limitations period is not stayed under § 108(c) "would defeat long-standing congressional concerns over nondischargeability and the disadvantaged status of the government as to unpaid taxes which led to enactment of the priority status in the first place." *In re Taylor*, 81 F.3d at 23. Reading § 108(c) without incorporating the IRC provisions, would thus eviscerate the legislative determination of Congress in providing for priority tax status and fundamentally alter the tax scheme provided under the IRC. Accordingly, the tolling provision of 26 U.S.C. § 6503(h) is activated in the bankruptcy context by § 108(c) of the Bankruptcy Code.

█ As an alternative grounds for tolling the running of priority taxes, the IRS argues that tolling the discharge period during the pendency of bankruptcy proceedings is permissible under the Bankruptcy Code's equitable powers found in 11 U.S.C. § 105(a).[7] The Tenth Circuit has held § 105(a) permits suspension because such action "preserves Congress's intent to afford the government certain time periods to pursue collection efforts, and at the same time prevents the debtor from avoiding priority by prolonging the initial bankruptcy proceeding." *In re Richards*, 994 F.2d 763, 765 (10th Cir.1993).

The exercise of equitable powers ensures that the government is not deprived of the full benefit in its collection efforts based upon the pendency of bankruptcy or successive petitions. The exercise of the Court's powers pursuant to 11 U.S.C. § 105(a) for the purposes of equitably tolling the running of priority taxes under § 507(a)(8) is justifiable depending upon the facts and circumstances of each case.

The Debtors sought the use of bankruptcy as a means to schedule the orderly ranking and payment of their creditors, rather than as an opportunity to deprive the IRS of payment on its claims. They did not prolong their case in order to avoid payment of their taxes. The Debtors paid approximately $30,000.00 to the IRS for its secured and unsecured claims and kept current on their payments to the Trustee for twenty-two months after filing for relief. They voluntarily dismissed their Chapter 13 case to make an offer in compromise as a good faith effort to satisfy their tax obligations. Even though the Debtors Aid not intentionally abuse the bankruptcy system, equity dictates that tolling is an appropriate remedy to be invoked through § 108(c) or § 105(a).

Based upon the foregoing, the Debtors' 1990 taxes are nondischargeable priority taxes pursuant to §§ 523(a)(1)(A) and 507(a)(8)(A)(i) as these delinquent taxes were suspended during the pendency of the Debtors' previous Chapter 13 case through § 108(c). Therefore, the Debtors' 1990 taxes and all post-petition interest and penalties pertaining thereto are priority tax claims excepted from discharge pursuant to § 523(a)(1)(A), if and when a discharge is granted. The IRS's Cross–Motion for Partial Summary Judgment is due to be granted and Debtors' Cross–Motion for Summary Judgment is denied.

---

6. The House Report evinces a similar concern: "An open-ended dischargeability policy would provide an opportunity for tax evasion through bankruptcy, by permitting discharge of tax debts before a taxing authority had an opportunity to collect any taxes due." H.R.Rep. No. 595, 95th Cong., 1st Sess. 190 (1978) *reprinted* in 1978 U.S.C.C.A.N. 5963, 6150.

7. Section 105 equips the Court with the power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title...." 11 U.S.C. § 105(a).

### JUDGMENT

The complaint of the Plaintiffs/Debtors, Martin and Susan Collins, to determine dischargeability of Internal Revenue Service Debt pursuant to 11 U.S.C. § 523(a)(1), having been tried before the Court, and in conformity with and pursuant to the **Memorandum Opinion** entered contemporaneously herewith, it is

**ORDERED, ADJUDGED, and DECREED** that the relief sought in the complaint of the Plaintiffs/Debtors, Martin and Susan Collins, seeking a determination that the Internal Revenue Service debt is dischargeable pursuant to 11 U.S.C. § 523(a)(1) is due to be **DENIED;** and it is further

**ORDERED, ADJUDGED, and DECREED** that the indebtedness owed by the Plaintiffs/Debtors to the Internal Revenue Service is **NONDISCHARGEABLE** and **JUDGMENT** is entered in favor of the Defendant, United States of America, against Plaintiffs/Debtors, Martin and Susan Collins, in the amount of $21,989.50, representing their 1990 priority tax debt, as well as accruing interest and penalties from the date of filing.