**In re Benny Allen DANIEL, Debtor.**

**Benny Allen DANIEL, Plaintiff,**

**v.**

**UNITED STATES of America INTERNAL REVENUE SERVICE, Defendant.**

**Bankruptcy No. 96–62209. Adversary No. 96–6191.**

United States Bankruptcy Court, N.D. Indiana, Hammond Division at Gary.

March 19, 1998.

William M. Jonelis, Munster, IN, for Benny Allen Daniel, Plaintiff.

David A. Haimes, U.S. Department of Justice, Washington, DC, for Internal Revenue Service (IRS), Defendant.

## MEMORANDUM OPINION AND ORDER ON MOTION FOR SUMMARY JUDGMENT BY DEFENDANT, UNITED STATES OF AMERICA

KENT LINDQUIST, Chief Judge.

### I

### STATEMENT OF PROCEEDINGS

This Adversary Proceeding came before the Court on a Motion for Summary Judgment filed by the Defendant, United States of America, (hereinafter: "Defendant") on May 6, 1997.

By Order of this Court dated June 2, 1997, the Chapter 13 Debtor and Plaintiff, Benny Daniel (hereinafter: "Debtor"), was given 30 days to file a Response or Answer to said Motion, and upon so doing the Defendant was granted 15 days to file a Reply thereto.

A Response or Answer to said Motion for Summary Judgment was filed by the Debtor on July 16, 1997.

A Reply to the Debtor's Response was filed by the Defendant on July 28, 1997.

The Complaint filed by the Debtor on December 18, 1996 alleges in part as follows:

1. That Plaintiff, Benny Allen Daniel filed the captioned Chapter 13 Bankruptcy Petition on September 13, 1996.

\* \* \* \*

3. That plaintiff, Benny Allen Daniel, Debtor estimates he has personal income tax liabilities to the Defendant, United States of America, Internal Revenue Service, Creditor, as follows:

| 1995 | $ 4,403.00 |
|------|-----------|
| 1994 | 2,613.95 |
| 1993 | 3,065.19 |
| 1992 | 3,905.00 |
| 1991 | 11,452.07 |
| 1990 | 1,004.30 |
| 1989 | 12,750.27 |
| 1988 | 19,859.96 |
| 1987 | 655.25 |
| 1986 | 941.94 |
| 1985 | 6,310.79 |
| 1984 | 1,818.31 |
| 1983 | 8,680.21 |

4. That Plaintiff Benny Allen Daniel, Debtor, needs to know the amount due and owing Defendant, United States of America, Internal Revenue Service, so he can properly fund his Chapter 13 Plan.

5. That by U.S.C. § 505 this court has the jurisdiction to determine the amounts of said liabilities.

6. That by 11 U.S.C. § 523(a) this Court has the jurisdiction to determine that taxes over (3) years old are dischargeable.

The Debtor's Complaint prayed that the Court issue an order holding that the Debtor's tax liabilities for 1983 through 1993 are dischargeable, and to issue an order to declare the amount that the Debtor owes the Defendant.

The Defendant filed an Answer on January 23, 1997 which: (1) alleges that the Internal Revenue Service is not a suable entity; (2) admits the allegations in paragraphs 1, 5 and 6 and (3) alleges that it is without sufficient information to form a belief as to the truth of the allegations in paragraphs 3 and 4.

## II

### Conclusions of Law and Discussion

#### A

##### Jurisdiction

No objections were made by the parties to the subject-matter jurisdiction of this Court, and the Court concludes that it has subject matter jurisdiction over this Proceeding pursuant to 28 U.S.C. § 1334(b). The Court further concludes that this Proceeding is a Core Proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(I), and (b)(2)(B).

#### B

### General Principles Relating to Summary Judgment

Under Rule 56(c) Fed.R.Civ.P., as made applicable by Fed. R. Bk. P. 7056, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). The inquiry that the court must make is whether the evidence presents a sufficient disagreement to require trial or whether one party must prevail as a matter of law. *Anderson,* 477 U.S. at 251–252, 106 S.Ct. at 2511–2512.

The moving party bears the burden of showing that there is an absence of evidence to support the nonmovant's case. *Celotex Corp. v. Catrett,* 106 S.Ct. at 2554, *supra.* Stated differently, the moving party, in making a motion for summary judgment, "has the burden of establishing the lack of a genuine issue of material fact." *Big O Tire Dealers, Inc. v. Big O Warehouse,* 741 F.2d 160, 163 (7th Cir.1984); *Korf v. Ball State University,* 726 F.2d 1222, 1226 (7th Cir.1984).

When ruling on a motion for summary judgment, inferences to be drawn from un-

derlying facts contained in such materials as attached exhibits, and depositions must be viewed in a light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *See also, Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 106 S.Ct. at 1356, *supra*, (All inferences to be drawn from the underlying facts must be viewed in a light most favorable to the nonmoving party); *Yorger v. Pittsburgh Corning Corp.*, 733 F.2d 1215, 1218 (7th Cir. 1984); *Marine Bank Nat. Ass'n. v. Meat Counter, Inc.*, 826 F.2d 1577, 1579 (7th Cir. 1987).

Federal Rule of Civil Procedure 56(e) provides in part as follows:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

When a motion for summary judgment is made and supported by the movant, Fed. R.Civ.P. 56(e) requires the non-moving party to set forth specific facts, which demonstrate that genuine issues of fact remain for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 106 S.Ct. at 1355, *supra*. Accordingly, once a moving party has met its initial burden, the opposing party must "set forth specific facts showing that there is a genuine issue for trial" and that the disputed

fact is material. *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.1983), *cert. den.*, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). Thus, if the movant carries his initial burden, the opposing party may not defeat the motion by merely relying on the allegations or denials in its pleadings. Rather, its response must set forth in the required filings specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. *See also, First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 289–90, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968); *Valance v. Wisel*, 110 F.3d 1269, 1274 (7th Cir.1997); *Scherer v. Rockwell International Corp.*, 975 F.2d 356, 360 (7th Cir.1992); *United States v. Pent–R Books, Inc.*, 538 F.2d 519, 529 (2nd Cir.1976), *cert. den.* 430 U.S. 906, 97 S.Ct. 1175, 51 L.Ed.2d 582 (1977).[1]

The nonmovant must do more than demonstrate some factual disagreement between the parties; the issue must be "material". Irrelevant and unnecessary facts do not preclude summary judgment even when they are in dispute. *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 978 (7th Cir.1996). A fact is considered material if it "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. at 2510, *supra*. The United States Court of Appeals, Seventh Circuit, in *Egger v. Phillips*, 710 F.2d 292, 296 (7th Cir.1983) (en banc) *cert. den.*, 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983), held that to preclude a summary judgment, the non-moving party must show the disputed fact to be

1. If the non-movant does not come forward with evidence that would reasonably permit the finder of fact to find in the non-movant's favor on a material question, then the Court must enter Summary Judgment against the non-movant. *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir.1994). The burden on the non-movant is not onerous. *Id.*, 24 F.3d at 920. The non-movant need not tender evidence in a form that could be admissible at trial. *Id.*, 24 F.3d at 921. Of course, the evidence set forth must be of a kind admissible at trial. *Id.*, 24 F.3d at 921, n. 2. Moreover, the non-movant need not match the movant witness for witness, nor persuade the Court that the non-movant's case is convincing,

the non-movant need only come forward with appropriate evidence demonstrating there is a pending dispute of material fact. *Id.*, 24 F.3d at 921 (Collecting cases).

As noted by the Court in the case of *Federal Deposit Insurance Corp. v. Meyer*, 781 F.2d 1260, 1262 (7th Cir.1986), a response is insufficient to raise a genuine issue of material fact if it is not based on the personal knowledge of the affiant, and where affiant alleges to be without information to admit or deny the allegations contained in the Movant's affidavit, and demands strict proof thereof, at best the response asserts a mere suspicion or theoretical question of fact that is insufficient to raise a genuine issue of fact.

material. That is, it must be outcome-determinative under applicable law. *See also, Whetstine v. The Gates Rubber Co.*, 895 F.2d 388, 391 (7th Cir.1990). Thus, facts not outcome-determinative under applicable law, though in dispute, may permit the entry of a summary judgment. In *Mintz v. Mathers Fund, Inc.*, 463 F.2d 495, 498, (7th Cir.1972), the Court stated that, "Appellate courts should not look the other way to ignore the existence of the genuine issues of material facts, but neither should they strain to find the existence of genuine issues where none exists." *See also, Kirk v. Home Indemnity Co.*, 431 F.2d 554, 559 (7th Cir.1970). The United States Supreme Court in the case of *Matsushita Electric Industrial Co., Ltd., et al. v. Zenith Radio Corp., et. al.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), stated as follows:

[t]he issue of fact must be "genuine." Fed. Rules Civ. Proc. 56(c), (e). When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. *See, DeLuca v. Atlantic Refining Co.*, 176 F.2d 421, 423 (C.A.2 1949) (L. Hand, J.), *cert. denied*, 338 U.S. 943, 70 S.Ct. 423, 94 L.Ed. 581 (1950); 10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2727 (1983); Clark, Special Problems in Drafting and Interpreting Procedural Codes and Rules, 3 Vand. L.Rev. 493, 504–505 (1950). *Cf. Sartor v. Arkansas Natural Gas Corp.*, 321 U.S. 620, 627 [64 S.Ct. 724, 88 L.Ed. 967] (1944). In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." Fed. Rule·Civ. Proc. 56(e) (emphasis added). *See also*, Advisory Committee Note to 1963 Amendment of Fed. Rule Civ. Proc. 56(e), 28 U.S.C.App., p. 616 (purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial"). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." *Cities Service, supra*, at 289 [88 S.Ct. 1575].

It follows from these settled principles that if the factual context renders respondents' claim implausible—if the claim is one that simply makes no economic sense—respondents must come forward with more persuasive evidence to support their claim than would otherwise be necessary.

*Id.*, 475 U.S. at 586–87, 106 S.Ct. at 1356. And as stated by the Court in *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971 (7th Cir.1996):

The nonmovant must do more, however, than demonstrate some factual disagreement between the parties; the issue must be "material". Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The nonmovant fails to demonstrate a genuine issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party...." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *see also, Sokaogon Chippewa Community v. Exxon Corp.*, 2 F.3d 219, 225 (7th Cir.1993), *cert. denied*, 510 U.S. 1196, 114 S.Ct. 1304, 127 L.Ed.2d 655 (1994); *Colosi v. Electri–Flex Co.*, 965 F.2d 500, 503–04 (7th Cir.1992).

*Id.*, 96 F.3d at 978.

In discussing the Movant's initial burden of production, where the nonmovant bears the burden of proof at trial, the Court in *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971 (7th Cir.1996) stated as follows:

In *Celotex* the Supreme Court explained:

[T]he plain language of Rule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue of material fact," since a complete failure of proof concerning an

essential element of the nonmoving party's case necessarily renders all other facts immaterial.

477 U.S. at 322–23, 106 S.Ct. at 2552. The Court took pains to make clear, however, that by this it did not intend to relieve the movant

of initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact.

*Id.,* at 323, 106 S.Ct. at 2553 (*quoting* Fed.R.Civ.P. 56(c)). The *Celotex* court decided only that where the movant demonstrates that the nonmovant will be unable to produce any evidence at trial supporting an essential element of a claim for which the nonmovant bears the burden of proof, summary judgment is appropriate even though the movant cannot adduce any affirmative evidence *disproving* the essential claim. *Id.* But even after *Celotex,* an unsupported—or "naked"—motion for summary judgment does not require the nonmovant to come forward with evidence to support each and every element of its claims. *Russ,* 943 F.2d at 591. Only after the movant has articulated with references to the record and to the law specific reasons why it believes there is no genuine issue of material fact must the nonmovant present evidence sufficient to demonstrate an issue for trial.

*Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553.

*Id.,* 96 F.3d at 978–79. (Emphasis in original).

2. It has been held that the Court is obligated to consider not only materials specifically offered in support of the motion, but also all "pleadings, depositions, answers to interrogatories and admissions" properly on file and thus properly before the Court. *Smith v. Hudson,* 600 F.2d 60, 64 (6th Cir.1979), *cert. dismissed,* 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415. Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention; the Court must consider both before granting a summary judgment. *Keiser v. Coliseum Properties, Inc.,* 614 F.2d 406, 410 (5th Cir.1980). However, in the case of *L.S. Heath & Son v. AT &*

*C*

## *Materials to be Considered on a Motion for Summary Judgment*

Federal Rule of Civil Procedure 56(c) provides as follows:

(c) Motion and Proceedings Thereon. The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.* A summary judgment, interlocutory in character may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages. (Emphasis added).

Thus, pursuant to Fed.R.Civ.P. 56(c) the Court may consider all papers of record as specified therein. *Federacion De Empleados Del Tribunal General De Justicia v. Torres,* 747 F.2d 35, 37 (1st Cir.1984); *Allen v. Carlotti,* 400 F.Supp. 1037, 1039 (S.D.Fla.1975), *aff'd.,* 552 F.2d 1086 (5th Cir.1977).[2]

The court has reviewed the following materials that have been filed of record to determine if they may be properly considered in ruling on the Motion for Summary Judgment by the Defendant:

(1) The Debtor's Complaint to Determine the Dischargeability of certain tax liabilities filed on December 18, 1997.

*T Information Systems, Inc.,* 9 F.3d 561 (7th Cir.1993), the Seventh Circuit observed that the Court need not "scour" the record to determine whether there exists a genuine issue of fact to preclude a summary judgment; instead, the Court can rely upon the nonmovant to show such a dispute if one exists. *Id.,* 9 F.3d at 567. And just as the Court is not required to "scour the record looking for factual disputes", it is not required to scour the party's various submissions to piece together appropriate arguments. *Little v. Cox's Supermarkets,* 71 F.3d 637, 641 (7th Cir.1995). A Court need not make a lawyer's case. *Id.*

(2) The Defendant's Answer to the Debtor's Complaint to Determine Tax Liability filed on January 23, 1997.

(3) The Defendant's Motion for Summary Judgment, which included a Statement of Material Facts with a Supporting Exhibits and a Memorandum of Law filed on May 6, 1997. Exhibit "A" to the Defendant's Motion is the Proof of Claim filed by the Defendant versus the Debtor's Chapter 13 Estate.

(4) The Debtor's Memorandum in Opposition to the Defendant's Motion for Summary Judgment filed on July 16, 1997. The Debtor in his Memo concurred with the Stipulations outlined in Rhetorical Paragraphs 7 and 8 of the Defendant's Statement of Material Facts.

(5) The Defendant's Reply Memorandum, filed on July 28, 1997 in support of its Motion for Summary Judgment.

## STATEMENT OF MATERIAL FACTS FILED BY DEFENDANT AND STATEMENT OF GENUINE ISSUES FILED BY DEBTOR PURSUANT TO LOCAL BANKRUPTCY RULE B-756

Local Bankruptcy Rule B-756, Motions for Summary Judgment, states as follows:

In addition to complying with the requirements of N.D. Ind. L.B.R. B-707.1, all motions for summary judgment shall be accompanied by a "Statement of Material Facts" which shall either be filed separately or as part of the movant's initial brief. The "Statement of Material Facts" shall identify those facts as to which the moving party contends there is no genuine issue and shall be supported by appropriate citations to discovery responses, depositions, affidavits, and other admissible evidence. Any party opposing the motion shall, within thirty (30) days of the date the motion is served upon it, serve and file a "Statement of Genuine Issues" setting forth all material facts as to which it is contended there exists a genuine issue, supported with appropriate citations to discovery responses, affidavits, depositions or other admissible evidence, together with any affidavits or other documentary material controverting the movant's position. The "Statement of Genuine Issues" may either be filed separately or as part of the responsive brief. In determining the motion for summary judgment, the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the "Statement of Genuine Issues" filed in opposition to the motion, as supported by the depositions, discovery responses, affidavits and other admissible evidence on file.[3]

Pursuant to Local Rules, if a summary judgment respondent fails to file a timely statement of disputed material facts, uncontroverted statements in the moving party's statement in support of summary judgment are deemed admitted. *Giannopoulos v.*

---

**3.** The United States Court of Appeals, Seventh Circuit, has endorsed the exacting obligation of Local Rules, such as Local Bankruptcy Rule B-756, which impose on a party contesting summary judgment to highlight which factual averments are in conflict as well as what record evidence there is to confirm the dispute, and explaining that the Courts are not obliged in our adversary system to scour the record looking for factual disputes, and may adopt local rules reasonably designed to streamline the resolution of summary judgment motions. *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 921–22 (7th Cir.1994), (*Citing, Herman v. City of Chicago*, 870 F.2d 400, 404 (7th Cir.1989); *Bell, Boyd & Lloyd v. Tapy*, 896 F.2d 1101, 1103–04 (7th Cir.1990)). The factual statements required by Local Rules are of significantly greater benefit to the Court than the parties, which does not have the advantage of the parties' familiarity with the record and often cannot afford the time combing the record to locate the relevant information. *Id.*, 24 F.3d at 923–24.

The decision whether to apply a Local Rule, such as set out above, requiring the Movant for Summary Judgment to file a Statement of Material Facts supported by appropriate citations, and requiring the opponent to file any material controverting the Movant's position strictly, or to overlook any transgressions, is one left to the trial court's discretion. *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir.1995); *Waldridge v. American Hoechst Corp.*, 24 F.3d at 923, *supra*, (Court may *sua sponte* strictly enforce local rule governing nonmovant's response to summary judgment motion, even if movant's did not strictly comply with rule, and despite movant's failure to object to nonmovant's noncompliance with local rule).

*Brach & Brock Confections,* 109 F.3d 406, 412 (7th Cir.1997) (collecting cases); *Feliberty v. Kemper Corp.,* 98 F.3d 274, 277 (7th Cir.1996); *Wienco v. Katahn Associates, Inc.,* 965 F.2d 565, 567 (7th Cir.1992); *Schulz v. Serfilco, Ltd.,* 965 F.2d 516, 518–19 (7th Cir.1992). However, the party opposing summary judgment is deemed to have admitted through failure to controvert, only those facts as set forth in the moving party's statement. *Wolf v. Buss (America), Inc.,* 77 F.3d 914, 922 (7th Cir.1996).

The Defendant on May 6, 1997 filed the following Statement of Material Facts as to which the Defendant contends there is no genuine issue of material facts:

(1) On January 21, 1994, the debtor, Benny Allen Daniel, filed a voluntary petition for bankruptcy pursuant to chapter 13 of the United States Bankruptcy Code (Case No. 94–60122). On April 26, 1994, the bankruptcy petition was dismissed.

(2) On September 19, 1994, the debtor filed a second voluntary petition for bankruptcy pursuant to chapter 13 of the United States Bankruptcy Code (Case No. 94–61822). On March 10, 1995, the bankruptcy petition was dismissed.

(3) On August 30, 1995, the debtor filed a third voluntary petition for bankruptcy pursuant to chapter 13 of the United States Bankruptcy Code (Case No. 95–61735). On November 3, 1995, the bankruptcy petition was dismissed.

(4) On September 13, 1996, the debtor filed a fourth voluntary petition for bankruptcy pursuant to chapter 13 of the United States Bankruptcy Code (the present action). On December 18, 1996, the debtor filed the instant adversary proceeding seeking to discharge certain outstanding assessed federal income tax liabilities.

(5) The debtor has outstanding assessed federal income tax liabilities for the following periods, and in the following amounts, as of September 13, 1996, the date of petition:

| Tax Year | Tax Due | Penalty to Date of Petition | Interest to Date of Petition | Total to Date of Petition |
| --- | --- | --- | --- | --- |
| 1985 | $ 0.00 | $0.00 | $149.82 | $ 149.82 |
| 1986 | 265.14 | 188.28 | 548.32 | 1,001.74 |
| 1987 | 0.00 | 0.00 | 500.20 | 500.20 |
| 1988 | 7,339.00 | 0.00 | 0.00 | 7,339.00 |
| | 1,080.00 | 2,430.94 | 8,593.7 | 12,104.64 |
| 1989 | 5,352.00 | 2,904.16 | 5,294.94 | 13,551.10 |
| 1990 | 483.00 | 229.43 | 352.56 | 1,064.99 |
| 1991 | 6,719.00 | 2,315.46 | 3,174.49 | 12,208.95 |
| 1992 | 2,497.48 | 768.7 | 1004.58 | 4,270.76 |
| 1993 | 2,383.00 | 485.77 | 576.76 | 3,445.53 |
| 1994 | 2,246.00 | 393.29 | 320.60 | 2,959.89 |
| 1995 | 4,267.00 | 285.34 | 156.90 | 4,709.24 |
| Total | $32,631.62 | $10,001.37 | $20,672.87 | $63,305.86 |

*See* Exhibit A, Proof of Claim, dated December 3, 1996, annexed hereto.

(6) The parties stipulate that the debtor's outstanding assessed federal income tax liabilities for the 1985, 1986, 1987, 1988, 1989, and 1990 tax years, including penalties and interest accrued thereon, are nonpriority claims under 11 U.S.C. § 507(a)(8)(A)(i).

(7) The parties stipulate that the penalties asserted on the debtor's outstanding assessed 1991 and 1992 federal income tax liabilities, and interest accruing on said penalties, are nonpriority claims under 11 U.S.C. § 507(a)(8)(A)(i).

(8) The parties stipulate that the debtor's outstanding assessed federal income tax liabilities for the 1993, 1994 and 1995

tax years, including penalties and interest thereon, are priority claims under 11 U.S.C. § 507(a)(8)(A)(i).

(9) *The sole question presented is whether the debtor's 1991 and 1992 outstanding assessed federal income tax liabilities, including interest accruing on said tax liabilities, are priority claims under 11 U.S.C. § 507(a)(8)(A)(i), which must be fully provided for the debtor's plan.* (emphasis supplied).

The Debtor on July 16, 1997 filed the following Statement of Genuine Issues in which the Debtor contends there are two genuine issues:

(1) Whether the six (6) month "tag back period" of 26 U.S.C. § 6503(h)(2) is applied once or for each Bankruptcy the Debtor has previously filed; and

(2) How to count the time period of said "tag back period(s)" and previously filed bankruptcy petitions.

■ The Debtor did not file a "Statement of Genuine Issues" pursuant to Local Bankruptcy Rule B–756 setting forth any material facts as to which it is contended there is a genuine issue. The Debtor's Statement of Genuine Issues raises issues of the applicable law to be applied to the facts, rather than genuine issues of material facts. Thus, the Court concludes that the facts set out in the Defendant's Statement of Material Facts Which Are Undisputed are deemed admitted. However, this conclusion is not dispositive of the Defendant's Motion as it does not follow that the Defendant is entitled to a summary judgment as a matter of law. A Court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded. The Court is required, at a minimum, to examine the movant's motion for summary judgment to ensure he has discharged his initial burden. *Carver v. Bunch,* 946 F.2d 451, 454–55 (6th Cir.1991). The Court must make a further finding that given the undisputed facts, summary judgment is proper as a matter of law. *Wienco v. Katahn Associates, Inc.,* 965 F.2d at 568, *supra.*

■ A summary judgment is proper where the issues of the case are concerned exclusively with the application of legal principles to undisputed facts. *Golden v. Kentile Floors, Inc.,* 475 F.2d 288, 291 (5th Cir.1973); *Major's Furniture Mart, Inc. v. Castle Credit Corp., Inc.,* 602 F.2d 538, 539 (3d Cir.1979); *Fitzsimmons v. Greater St. Louis Sports Enterprises, Inc.,* 63 F.R.D. 620, 621 (D.C.Ill. 1974). Thus, because there are no genuine issues of material fact present, and only an issue of the proper application of the law, this Adversary Proceeding can be decided based on the Defendant's Motion for Summary Judgment.

### D

#### Judicial Notice

The Court takes judicial notice of the following court documents relating to the Debtor's main case and the three prior Chapter 13 cases filed by the Debtor: [4].

(1) That the Debtor filed his first Chapter 13 Petition on January 21, 1994 (Case No. 94–60122), which was dismissed by Order

---

4. Federal Rule of Bankruptcy Procedure 9017 provides that the Federal Rules of Evidence apply in cases under the Code. *See also,* Fed. R.Evid. 1101(a) and (b). Federal Rule of Evidence 201 provides that the Court, whether or not requested, may take judicial notice of adjudicative facts at any stage of the proceedings. Federal Rule of Evidence 201 is the only evidentiary rule on the subject of judicial notice.

This Court has held in *In re Snider Farms, Inc.,* 83 B.R. 977, 986 (Bankr.N.D.Ind.1988), citing, *In re Woodmar Realty,* 294 F.2d 785, 788 (7th Cir.1961), *cert. den.,* 369 U.S. 803, 82 S.Ct. 643, 7 L.Ed.2d 550 (1962), that a bankruptcy court is duty bound to take judicial notice of its records and files. *See also, United States v. Wood,* 925 F.2d 1580, 1582 (7th Cir.1991) (In nondischargeability proceedings the court can take judicial notice of matters of public record); *State of Florida Board of Trustees of Internal Improvement Trust Fund v. Charley Toppino & Sons, Inc.,* 514 F.2d 700, 704 (5th Cir.1975) (not error for bankruptcy court to take judicial notice of related proceeding and records in cases before a court); *In re E.R. Fegert, Inc.,* 887 F.2d 955, 957–58 (9th Cir.1989) (The Court may take judicial notice of the file and record in the underlying case); *Matter of Missionary Baptist Foundation of America,* 712 F.2d 206, 211 (5th Cir.1983) (A Court may take judicial notice of the record in prior related proceedings and draw reasonable inferences therefrom).

of this Court on April 26, 1994. (95 days elapsed from date of Petition to date of dismissal)

(2) That the Debtor filed his second Chapter 13 Petition on September 19, 1994 (Case No. 94–61822), which was dismissed by Order of this Court on March 10, 1995. (172 days elapsed from date of Petition to date of dismissal). A total of 146 days elapsed between the date the first Case No. 94–60122 was dismissed on April 26, 1994, and the date the Debtor filed his second Petition on September 19, 1994.

(3) That the Debtor filed his third Chapter 13 Petition on August 30, 1995 (Case No. 95–61735), which was dismissed by Order of this Court on November 3, 1995. (65 days elapsed from date of Petition to date of dismissal). A total of 173 days elapsed between the date the second Case No. 94–61822 was dismissed on March 10, 1995, and the date the Debtor filed his third Petition on August 30, 1995.

(4) That the Debtor filed his fourth Chapter 13 Petition, which is presently pending before this Court, and in which this Adversary Proceeding No. 96–6191 was filed on September 13, 1996 (Case No. 96–62209). A total of 314 days elapsed between the time the Debtor's third Case No. 95–61735 was dismissed on November 3, 1995, and the date the Debtor filed his fourth Petition under Case No. 96–62209 on September 13, 1996, which is presently before the Court.

 The Court may employ the use of judicial notice in ruling upon a motion for summary judgment substantially as it would be utilized at trial. *St. Louis Baptist Temple, Inc. v. Federal Deposit Ins. Corp.*, 605 F.2d 1169, 1171 (10th Cir.1979). Thus, the Court in deciding such a motion can take judicial notice of the records and files of its own court. *United States v. Philadelphia*, 140 F.2d 406, 408 (3rd Cir.1944); *Fletcher v. Norfolk Newspapers, Inc.*, 239 F.2d 169 (4th Cir.1956); *Latta v. Western Inv. Co.*, 173 F.2d 99, 103 (9th Cir.1949), *cert. den.*, 337 U.S. 940, 69 S.Ct. 1516, 93 L.Ed. 1744.

## E

### Positions of the Parties

The Defendant's Memorandum in Support of its Motion for Summary Judgment, filed on May 6, 1997 argues that each of the Debtor's bankruptcy petitions initiated a 6 month "tag back" period, which should be included in the computation required by § 507(a)(8)(A)(i)[5] to determine the unsecured priority tax claim period for the Debtor's Fourth Petition filed on September 13, 1996, as it relates to the Debtor's 1991 and 1992 assessed income taxes only. *Citing Montoya v. United States*, 965 F.2d 554 (7th Cir.1992); 26 U.S.C. § 6503(h)(2) and 11 U.S.C. §§ 108(c), 507(a)(8)(A)(i).

The Defendant reminds the court that a priority federal tax claim is one for which the federal income tax return was due, including extensions, after three years before the date of the filing of the bankruptcy petition. The Defendant agrees that if the Debtor had not filed his three prior Chapter 13 Petitions, the

---

5. Section 507(a)(8)(A)(i) states:

(a) The following expenses and claims have priority in the following order:

* * *

(8) Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for—(A) a tax on or measured by income or gross receipts—

(I) for taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition; ...

It also noted that in a case under Chapter 7, § 523(a)(1) renders debts that are entitled to priority under § 507 of the Code nondischargeable. It is also observed that § 1322(a)(2) states as follows:

(a) The plan shall—

* * *

(2) provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim;

Any plan lacking the requirements of § 1322(a)(2) (a full payment of priority claims) cannot be confirmed without the claim holders consent. *Matter of Escobedo*, 28 F.3d 34, 35 (7th Cir.1994).

Debtor's income tax liability the years for 1991 and 1992 would not have been entitled to unsecured priority status under § 507(a)(8), because the Debtor's 1991 and 1992 federal income tax returns for those years were last due on or before April 15, 1992 and April 15, 1993 respectively, which is more than three years before September 13, 1996, the date of the Debtor's instant and fourth Chapter 13 Petition.

The Defendant notes that the parties do not disagree that pursuant to 11 U.S.C. § 108(c)(1)[6] and 26 U.S.C. § 6503(h)[7] that the three year period must be tolled during the time period within which the Debtor had a bankruptcy case pending, and for an additional six months thereafter. *Citing Montoya v. United States*, 965. F.2d 554 (7th Cir. 1992); *In re Cowart*, 199 B.R. 799 (Bankr. M.D.Fla.1996) (collecting cases); *In re Shedd*, 190 B.R. 692 (Bankr.M.D.Fla.1996) (collecting cases); *Cf. In re Gore*, 182 B.R. 293 (Bankr.N.D.Ala.1995). The Defendant asserts that the sole issue before the Court on the Defendant's Motion for Summary Judgment is "[w]hether the debtor's 1991 and 1992 outstanding federal income tax liabilities, including interest accruing on said tax liabilities, are priority claims under 11 U.S.C. § 507(a)(8)(A)(i), which must be fully provided for in the debtor's Plan." *See* Defendant's Memorandum filed May 6, 1997, p. 4. The Defendant also stated the issue as follows: "The sole question is how many days was the three year priority claim period under 11 U.S.C. § 507(a)(8)(A)(i) tolled by the

debtor's three prior bankruptcies". *Id.*, at P. 6.

The Defendant then reminds the court that with an issue that involves statutory construction, that the starting point is the plain language of the statute itself. The Defendant then refers to the legislative history to § 108(c) which states as follows:

> In the case of Federal tax liabilities, the Internal Revenue Code suspends the statute of limitations on a tax liability of a taxpayer from running while his assets are in the control or custody of a court *and for 6 months thereafter* .... The amendment applied this rule in a title 11 proceeding. Accordingly, the statute of limitations on collection of a nondischargeable federal tax liability of a debtor *will resume running after 6 months following the end of the period during which the debtor's assets are in the control or custody of the bankruptcy court.* This rule will provide the Internal Revenue Service with adequate time to collect nondischargeable taxes following the end of the title 11 proceedings.

*Montoya*, 965 F.2d at 557–58 (*citing* S.Rep. No. 989, 95th Cong., 2nd Sess. 30–31 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5816–5817) (emphasis supplied). The Defendant asserts that accordingly, the 1991 and 1992 federal income tax liabilities of the Debtor are entitled to Unsecured Priority Claim status versus the Debtor's Chapter 13 estate, pursuant to § 507(a)(8)(A)(i), because of the application of three "tag back periods."

---

**6.** Section 108(c) provides in pertinent part as follows:

> Except as provided in section 524 of this title, *if applicable nonbankruptcy* law, an order entered in a nonbankruptcy proceeding, or an agreement fixes *a period for commencing or continuing a civil action* in a court *other than a bankruptcy court on a claim against the debtor,* or against an individual with respect to which such individual is protected under 1201 or 1301 of this title, a̐nd *such period has not expired before the date of the filing of the petition, then such period does not expire until the later of—*
> (1) *the end of such period, including any suspensions of such period occurring on or after the commencement of the case;* or
> (2) 30 days after notice of termination or expiration of the stay under section 362, 922, 1201,

or 1301 of this title, as the case may be, with respect to such claim. (emphasis supplied).

**7.** Section 6503(h) provides:

> (h) CASES UNDER TITLE 11 OF THE UNITED STATES CODE—*The running of the period of limitations* provided in section 6501 or 6502 on the making of assessments or collection *shall,* in a case under title 11 of the United States Code, *be suspended for the period during which the Secretary is prohibited by reason of such case from making the assessment or from collecting and—*
> (1) for assessment, 60 days thereafter, and
> (2) *for collection, 6 months thereafter,* (emphasis supplied).

The Defendant summarizes its position as follows:

Turning to the 1991 tax year, the debtor's 1991 federal income tax return was due on April 15, 1992. From April 15, 1992 until January 21, 1994, the date of the debtor's first petition, 646 days (one year and 281 days) ran on the collection period. The collection period was then suspended from January 21, 1994 until April 26, 1994, the date of dismissal, and then for an additional "6 months thereafter," until October 26, 1994. By this time, the debtor had already filed his second bankruptcy petition on September 19, 1994. Consequently, the collection period continued to be suspended until March 10, 1995, when the second bankruptcy was dismissed, and for an additional "6 months thereafter," until September 10, 1995. However, by this time the debtor had already filed his third bankruptcy on August 30, 1995. Accordingly, the collection period continued to be suspended until November 3, 1995, and for an additional "6 months thereafter," until May 3, 1996. From May 3, 1996 until the filing of the present bankruptcy petition on September 13, 1996 an additional 133 days ran on the collection period.

In total, only 779 days ran on the three year statute of limitations period for collecting the debtor's outstanding assessed 1991 federal income tax liabilities, which is less than the three years allowed under the Code. Likewise, the United States had less than three years to collect the debtor's outstanding assessed 1992 federal income tax liabilities. Therefore, due to the debtor's three previously filed bankruptcy petitions, the debtor's outstanding assessed 1991 and 1992 federal income tax liabilities are priority claims of the United States that must be fully provided for in the debtor's plan.

*See* Defendant's Memorandum filed May 6, 1997, pp. 9–10.

The Debtor's Memorandum in Opposition to the Defendant's Motion for Summary Judgment, filed on July 16, 1997, argues that the Seventh Circuit's discussion in *Montoya v. United States,* 965 F.2d 554 (7th Cir.1992), does not provide a clear decision as to whether the "tag back period" should be applied for each bankruptcy case filed by a debtor, or whether there should be only one "tag back period" in determining whether certain tax debts are dischargeable. However, the Debtor notes that *Montoya* involved three prior bankruptcy petitions and the application of only one "tag back period." The Debtor also refers this court to *In re Strickland,* 194 B.R. 888 (Bankr.D.Idaho 1996) (previous Chapter 13 case converted to Chapter 7 with only one tag back period), and *In re Dodson,* 191 B.R. 869 (Bankr.D.Or. 1996) (3 prior petitions and only one tag back period). The Debtor then refers the court to the language of the 10th Circuit in *In re Richards,* 994 F.2d 763 (10th Cir.1993) which states:

And 26 U.S.C. § 6503(h) of the Internal Revenue Code suspends the time within which the government can collect on debtor's taxes for the pendency of the bankruptcy proceedings and six months thereafter.

*Id.,* 994 F.2d at 765.

Exhibit "A" to the Debtor's Memorandum illustrates the Debtor's argument. It states:

| | TOTAL DAYS | DAYS |
|---|---|---|
| 1) | Statutory Period - 3 years (365 X 3) | 1095 |
| 2) | "Tag Back Period" - 6 months (30 X 6) | 180 |
| 3) | 1st Bankruptcy | 95 |
| 4) | 2nd Bankruptcy | 172 |
| 5) | 3rd Bankruptcy | 65 |
| | TOTAL | 1607 |

*Counting Backwards*

09–13–96 to 01–01–96 is 257 days

12–31–95 to 01–01–95 is 365 days

12–31–94 to 01–01–94 is 365 days

12–31–93 to 01–01–93 is 365 days

12–31–92 to 4–20–92 is 255 days

TOTAL: 1607 days

The Priority tax period for Debtor's Bankruptcy Petition is from April 20, 1992 to September 13, 1996

The Defendant's Reply Memorandum filed on July 28, 1997, recognizes that the only dispute between the parties is the time computation and whether 6 months should be added to the time period for each bankruptcy filing or only once as suggested by the Debtor. The Defendant distinguishes several of the Debtor's authorities on the grounds that the precise issue was not resolved by the cases, because the court found that the tax liabilities were entitled to priority treatment whether or not the 6 month period was added for each bankruptcy filing. *Citing Montoya v. United States,* 965 F.2d 554 (7th Cir. 1992); *In re Richards,* 994 F.2d 763 (10th Cir.1993); *In re Strickland,* 194 B.R. 888 (Bankr.D.Idaho 1996).

The Defendant then refers the Court to *In re Dodson,* 191 B.R. 869 (Bankr.D.Or.1996), where the court did address the precise issue before the Court. The Defendant argues that this Court should apply the method of calculating the "look back" period utilized by the *Dodson* court, which according to the IRS held that the time periods were generally tolled during each bankruptcy case, and six months after each case was dismissed. In addition, according to the IRS, the *Dodson* court found that if there was less than six months between bankruptcy petitions, the time period was not tolled for the entire six month period, but was tolled for less than a six month period between cases, or only up to the subsequent bankruptcy Petition. The IRS urges the Court to adopt the analysis of the *Dodson* court, and states that its calculations in this case are identical to those used by the *Dodson* court. *See* IRS Reply Memo

filed July 28, 1997, p. 3. The Defendant also asserts that the plain language of 26 U.S.C. § 6503(b) specifically provides that the limitation period "in a *case* under Title 11 of the United States Code is suspended for the period during which the Secretary is prohibited by reason of *such case* from making the assessment or from collecting and . . . *for collection, 6 months* thereafter." (emphasis in original). The Defendant argues that because this statute clearly refers to a "case" in the singular, therefore, the number of days the collection period is suspended (or tolled) must be calculated for each case as calculated by the Defendant in its Motion for Summary Judgment.

The Defendant asserts that if the Debtor's argument were accepted, a debtor who filed four separate bankruptcies in which the stay was interposed for one year in each case would have the collection period under § 6502 tolled for four and one-half years, when § 6503(b) clearly provides that the period should be tolled for six years (Four years, plus four six month periods), and that under the Debtor's rationale, the Bankruptcy Code would permit a debtor to abuse the bankruptcy system by filing a new bankruptcy petition every time the IRS restarted its collection efforts following a previous bankruptcy.

*F*

*Whether when the Debtor has filed multiple Petitions, the Bankruptcy Code requires the Imposition of a six month "look back period" for each Petition when determining the priority of tax obligations pursuant to § 507(a)(8)(A)(i).*

■ It is clear from the parties' Memoranda, that they agree that the tolling of the priority "look back" period in § 507(a)(8)(A)(i) should be computed by adding the time during which the Debtor had a prior bankruptcy case pending under Title 11 to the three year "look back" period in the statute. The parties also agree upon the addition of at least one 6 month period pursuant to 11 U.S.C. § 108(c) and 26 U.S.C. § 6503(h) to the "look back" period, where

the Debtor has filed multiple petitions. However, since this is the Debtor's fourth Petition, the Debtor argues that only one 6 month period is appropriate, while the Defendant argues that three—6 month periods are required by the relevant statutes, because the Debtor had previously filed three Chapter 13 Petitions, all of which had been dismissed.

The United States Court of Appeals, Seventh Circuit, in the case of *In re Montoya*, 965 F.2d 554 (7th Cir.1992), concluded that the three year nondischargeability period for unpaid taxes was tolled, not just while the automatic stay was in place during earlier bankruptcy cases, but also during the time the IRS' claims were disallowed by the bankruptcy court as a result of its sustaining the objection to the IRS' assessments by the debtors, and the IRS' failure to file a response. In *Montoya*, the Debtors had originally filed a Chapter 11 Petition on March 1, 1983. Their plan was confirmed on January 14, 1985, and August 11, 1987, the Chapter 11 case was closed. The Debtors thereafter filed a Chapter 7 on February 15, 1989, which was dismissed on July 12, 1989. On July 14, 1989, the Debtors filed their third bankruptcy petition, again under Chapter 7. The Debtors instituted an adversary proceeding versus the IRS asserting that their unpaid taxes for 1982 and 1983 should be discharged. The *Montoya* Court stated as follows:

> Section 108(c) of the Code extends the time creditors have to collect claims that have been stayed by a bankruptcy proceeding. This section provides that an unexpired nonbankruptcy statute of limitations continues for 30 days after the stay has been lifted or until the limitations period has expired, whichever is later.

> Parallel provisions to § 108(c) are found in § 6503 of the Internal Revenue Code. The IRS generally has three years to assess and six years to collect taxes. 26 U.S.C. §§ 6501 and 6502. These limitations periods are tolled when the taxpayer's assets are tied up in a court proceeding and for an additional six months. 26 U.S.C. § 6503(b). Section 6503(h) specifically suspends the time for assessing or collecting taxes when the IRS is precluded from acting because of a pending bankruptcy case.

The sole issue in this appeal, given that it is undisputed that the look-back period does not include the time the automatic stay was in effect, is whether this period may also be tolled because of any other proceedings in the bankruptcy court. The Montoyas contend that the district court erred in finding that the tolling period included more than the time that the IRS claims were stayed. They argue that their tax liability should be discharged since three year and six months after the Chapter 11 plan was confirmed would have expired on July 14, 1988.

\* \* \* \*

The tolling provisions of § 6503 are given effect in the context of a bankruptcy proceeding by § 108(c) of the Bankruptcy Code. *Brickley*, 70 B.R. at 115. Section 108(c) implicitly incorporates the limitations period of § 6503 by preserving nonbankruptcy statutes of limitations which have not yet expired. The relevant legislative history of § 108(c) is also clear on this point:

> In the case of Federal tax liabilities, the Internal Revenue code suspends the statute of limitations on a tax liability of a tax payer from running while his assets are in the control or custody of a court and for 6 months thereafter.... The amendment applies this rule in a title 11 proceeding. Accordingly, the statute of limitations on collection of a nondischargeable Federal tax liability of a debtor will resume running after 6 months following the end of the period during which the debtor's assets are in the control or custody of the bankruptcy court. This rule will provide the Internal Revenue Service with adequate time to collect nondischargeable taxes following the end of the title 11 proceedings. S.Rep. No. 989, 95th Cong., 2nd Sess. 30–31 (1978) U.S.Code Cong. & Admin.News 1978, pp. 5787, 5816–5817.

It would be similarly inconsistent with the intent of § 108(c) to fail to exclude from the look-back period the time the IRS

claims were disallowed as to charge the IRS for the time the automatic stay was in place. The IRS was as equally barred from acting when the disallowance was in place as it was when its claims were stayed.

\* \* \* \*

Tolling the look-back period during the time the IRS claims were disallowed ensures that proceedings in the bankruptcy court do not prevent the IRS from having adequate time to bring an action against delinquent taxpayers. The disallowance, along with the automatic stay, acted to bar the IRS from collecting. Because the IRS has not yet had 3 years and 6 months to collect the assessments, the Montoya's tax liability is not discharged.

*Id.,* 954 F.2d at 955–57 (footnotes omitted). *Accord, In re Waugh,* 109 F.3d 489, 493, n. 8 (8th Cir.1997) (collecting cases).[8] *Contra, In re Nolan,* 205 B.R. 885, 887–88 (Bankr. M.D.Tenn.1997) (collecting cases).

The Seventh Circuit in *Montoya,* 965 F.2d 554, did not decide the precise issue in this case because, although the debtors had filed multiple cases. The court found that the tax liability was a priority claim, and the debtor's tax liability was not discharged because the I.R.S. did not have the minimum three years and six months to collect the tax assessments, based on the time the automatic stay was in effect. *Id.,* 965 F.2d at 557. However, the *Montoya* Court did observe as follows:

> Section 507 mandates that taxes due within three years of the bankruptcy petition are not dischargeable 11 U.S.C. § 507(a)(7)(A)(i). Therefore, absent the Chapter 11 proceeding the Montoyas' tax debt would have been discharged because the last date on which their tax returns could have been filed fell outside the three-year nondischargeability or what the parties have called the "look-back" period.

---

**8.** *See also, In re Strickland,* 194 B.R. 888, 890 (Bankr.D.Idaho 1996), the Debtors filed a Chapter 13 shortly after the I.R.S. resumed its collection efforts following their discharge in a prior Chapter 7 case. The court found that 26 U.S.C. § 6503 tolls the priority periods of 11 U.S.C. § 507(a)(8) under all circumstances and not just the cases where the debtor's actions intentionally sabotage the collection of federal tax liabilities. *Id.,* 194 B.R. at 892. In *Strickland,* the court found that neither § 6503(b) or § 6503(I) prohibit the I.R.S. from collecting or assessing taxes for six months following discharge, but the provisions suspend the statute of limitations for six months to allow the I.R.S. to begin the collection procedure anew after interruption by the bankruptcy proceeding. *Id.,* 194 B.R. at 892; *Waugh v. Internal Revenue Service (In re Waugh),* 109 F.3d 489, 493–94 (8th Cir.1997) ("[F]uture bankruptcy petitioners could abuse the bankruptcy process if section 108(c) does not operate to suspend the priority period of section 507(a)(8)(A)(i)"); *In re Taylor,* 81 F.3d 20, 23–25 (3d Cir.1996) (§ 507(a)(8)(A), § 108(c) and § 6503(h), "read together evidence a congressional concern to preserve the collectibility of tax claims."); *West v. United States (In re West),* 5 F.3d 423, 427 (9th Cir.1993) ("The six month extension illustrates a legislative recognition that interruption in collection activity necessitates additional time once the IRS is again free to pursue tax debtors.... [C]ommon sense dictates that such a period [6 month extension in § 6503] was given in order to provide the IRS with sufficient time to restart and refocus its collection efforts once able to do so."); *In re Richards,* 994 F.2d 763, 765 (10th Cir.1993) ("neither the three-year period provided for in 11 U.S.C. § 507(a)(7)(A)(i) [now § 507(a)(8)(A)(i)] nor the 240 day period provided for in 11 U.S.C. § 507(a)(7)(A)(ii) [now § 507(a)(8)(A)(ii)] runs during the pendency of the first of two successive bankruptcies") (collecting cases); *In re Cowart,* 199 B.R. 799, 800–01 (Bankr.M.D.Fla.1996) ("[T]he majority of courts have arrived at the conclusion that a prior bankruptcy proceeding tolls the three year time period for priority and dischargeability of taxes in § 507 and § 523."); *Shedd v. United States of America (In re Shedd),* 190 B.R. 692, 694 (Bankr. M.D.Fla.1996) ("[C]ourts have consistently held that the additional six months afforded the Internal Revenue Service to resume collection activities after the conclusion of a Bankruptcy Case also served to toll the running of the priority period, thereby preserving the nondischargeability of the taxes for the full term provided in the Code."); *In re Eysenbach,* 183 B.R. 365, 368–69 (W.D.N.Y.1995) ("[C]ourts have almost uniformly interpreted § 108(c) to activate IRC § 6503, thereby preventing the periods for nondischargeability from running during the course of a debtor's bankruptcy case and for six months thereafter."); *In re Teeslink,* 165 B.R. 708, 710–11 (Bankr.S.D.Ga.1994) (" § 108(c) extends a statute of limitations for creditors in actions against the debtor when the creditor is prevented from proceeding outside the bankruptcy court due to the automatic stay of the Bankruptcy Code.") (collecting cases).

The Chapter 11 and first Chapter 7 proceedings, however, affect this calculation. Under § 362 of the Bankruptcy Code, an automatic stay is imposed on all creditors' actions against the debtor until the time of confirmation, so that between March 11, 1983 and January 14, 1985, and February 15, 1989, and July 12, 1989, the IRS was prohibited from collecting any taxes. Section 108(c) of the Code extends the time creditors have to collect claims that have been stayed by a bankruptcy proceeding. This section provides that an unexpired nonbankruptcy statute of limitations continues for 30 days after the stay has been lifted or until the limitations period has expired, whichever is later.

\* \* \* \*

The Montoyas do not dispute that calculation of the look back period in the pending Chapter 7 case *does not include the time the automatic stay was in place during the two earlier bankruptcy proceedings. That principle is consistent with the reasoning in Brickley v. United States (In re Brickley)*, 70 B.R. 113 (9th Cir. BAP 1986), and numerous subsequent cases. *See for example, Molina v. United States (In re Molina)*, 99 B.R. 792 (S.D.Ohio 1988); *United States v. Deitz (In re Deitz)*, 116 B.R. 792 (D.Colo.1990); *In re Quinlan*, 107 B.R. 300 (Bankr.D.Colo. 1989).

*Id.*, 965 F.2d at 555–56 (footnotes omitted) (emphasis supplied). It is noted that the case of *In re Molina*, 99 B.R. 792, cited favorably by the *Montoya* Court, involved four bankruptcy petitions by the Debtor, the last one being filed on March 26, 1986. The Court held that the three year period for determining the tax claims priority status of the Debtor's 1978, 1979, 1980, 1981 and 1984 income tax liabilities was tolled by the previous petitions. Thus, at least in *dicta,* the *Montoya* Court indicates that if more than two bankruptcy petitions are filed, the § 507(a)(8)(A)(i) three year "look back" period is tolled while each case is pending.

After a review of the authorities cited by the parties, this court concludes that the

middle ground adopted by court in *In re Dodson,* 191 B.R. 869, 874 (Bankr.D.Or.1996), and modified as discussed below is the correct application of the relevant statutes. In *Dodson,* as in the case at bar the Debtor had filed four Petitions, and the three previous cases had been dismissed. In *Dodson,* the fourth Petition in *Dodson* was filed on January 1, 1994. The IRS asserted that the Debtors' 1984 income tax return was entitled to unsecured priority status. The tax return for 1984 was due on April 15, 1985, and the 1984 income taxes were assessed on June 17, 1985. The three year "look-back" period pursuant to § 507(a)(8)(A)(i) as to the Fourth Petition filed on November 1, 1994, was November 1, 1991. The IRS asserted that the tolling period should commence from the date that the First Petition is filed for which a return, if required, is last due, and that to this period, should be added three six month tolling periods. The *Dodson* Court framed the issue as follows: "Whether the government is entitled to an extension of the tolled period for the full six months for each of the Debtor's previous filings". The *Dodson* Court stated as follows:

In this case, unlike in *Brickley* [70 B.R. 113 (9th Cir. BAP 1986)], *In re West* [5 F.3d 423 (9th Cir.1993)], or any other reported case of this genre, the debtors filed more than two consecutive bankruptcies on dates which require the court, on a third or later filing, to determine the extent of the "credit" for the maximum six month tolling period arising after a second or later filing. In neither *Brickley* nor *West* was this an issue because in each case there had been only a second filing. Under those facts, whether a full six month tolling period for a previous filing should be "credited" cannot become an issue. Between the first and second filing either the period between filings has been lengthy enough to encompass the period during the first bankruptcy, plus six months, or it has not. In the latter case the tax debt, if priority in the first case, will remain priority. In the former case, the government will have received full "credit" for the mandated tolling period.

Here, between two of their three previous cases the debtors refiled bankruptcy petitions before the six month suspension period following the previous case dismissals provided for under both § 6503(b) and § 6503(h) had expired. The government believes it is entitled to a full six month "credit" on the tolling period for each of the debtors' three previous bankruptcy filings. The debtors claim the government is entitled to count for that purpose only so much of each six month period that actually passed between each of the filings.

The government's brief assumes, for purposes of determining the total time tolled by § 6503, that the date which is tolled is April 15, 1985. The debtors' brief is unclear on this point. This court has struggled with the question from which date the § 6503 tolling period incorporated into § 507(a)(7)(A)(i) through Brickley should be counted. Yet the date from which the tolling period is counted is crucial to the controversy before it. There are several potentially relevant dates from which the tolling period can be counted.

\*　　\*　　\*　　\*

[t]hroughout the opinion the [*Brickley*] Court focused on the reasonableness, given a previous bankruptcy filing, of tolling the time encompassed by the three year reachback period of § 507(a)(7)(A)(i). In other words, tolling should impact the bankruptcy statute, not a tax statute.

*West* reinforces this conclusion within the context of the two hundred forty day assessment period of § 507(a)(7)(A)(ii). It concluded "[T]he debtors' joint Chapter 13 case suspended the running of § 507(a)(7)(A)(ii)'s 240–day priority period from the date of the bankruptcy petition until six months after, the case was dismissed." *West,* 5 F.3d at 427.

Therefore this court concludes that, in applying the policy represented in these two cases, within the context of § 507(a)(7)(A)(i), the tolling period recognized in § 6503 should commence from the date, in the first bankruptcy, under given

facts, for which a return, if required, is last due, including extensions.

\*　　\*　　\*　　\*

Therefore the court must address the ultimate issue between the parties: Whether the government is entitled to an extension of the tolled period for a full six months for each of the debtors' previous bankruptcy filings.

However, a careful examination of the facts before this court reveals that what the government in fact is asking it to do is to provide them a full six month "credit" for tolling under § 6503 for the period between the debtors' first and second bankruptcy filing.

\*　　\*　　\*　　\*

This court has determined that the particular circumstances in which the government now finds itself can arise only if, after a debtor's second or subsequent bankruptcy filing and prior to the debtor's refiling, the government fails to collect the tax at issue after it is no longer stayed from its collection efforts for a uninterrupted period which is lengthy enough to include the actual prior days in bankruptcy plus any actual days between filings which are less than six months in length plus an actual six month period which has expired after any filing. If this post-bankruptcy collection period were any shorter, upon a subsequent bankruptcy filing the tolling period clearly authorized by the statute would not have run and the tax would retain its priority status. In fact, because of tolling, the greater either the number or length of the debtor's previous bankruptcy filings the longer the uninterrupted period of time the government is given to collect the tax once the debtor is no longer in bankruptcy.

A review of the Congressional purpose in enacting § 108(c) is useful. As noted in *Brickley,* the Senate Report discussing what became § 108(c) states:

In the case of Federal tax liabilities, the Internal Revenue Code suspends the statute of limitations on a tax liability of

a taxpayer from running while his assets are in the control or custody of a court and for six months thereafter [Section 6503]. The Amendment applies this rule in a title 11 proceeding. Accordingly, *the statute of limitations on collection of non-dischargeable Federal tax liability of a debt will resume running after 6 months following the end of the period during which the debtor's assets are in control or custody of the bankruptcy court. This rule will provide the Internal Revenue Service adequate time to collect nondischargeable taxes following the end of the title 11 proceedings.* 70 B.R. [at] 115, *citing* S.Rep. No. 989, 95th Cong., 2nd Sess. 30–31 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5816, 5817 (emphasis added).

\* \* \* \*

The *West* court recognized that "[t]he sole function of assigning priority to certain tax claims is to enhance the government's ability to collect those claims." *West,* 5 F.3d at 426, fn. 7. The court noted that the statutory six months provided for the suspension of the limitations period on tax collections after restoration of the Service's right to proceed with collection "illustrates a legislative recognition that interruption in collection activity necessitates additional time once the IRS is again free to pursue tax debtors. Although the legislative history [of § 6503] is bereft of reasons for granting the extension, common sense dictates that such a period was given in order *to provide the IRS with sufficient time to restart and refocus its collection efforts once able to do so." West,* 5 F.3d at 427.

\* \* \* \*

Legislative history identifies that the purpose of the government's additional six month tolling period after bankruptcy is to provide it adequate time to pursue collection of the tax debt. For collections efforts sufficient time was identified as six months. However, as this court has pointed out, for purposes of determining the right to priority status under what is now § 507(a)(8)(A)(i) the *government will find it necessary to assert a right to a separate six month "credit" for each previous bankruptcy filing only where it has had far more than six months' additional time after a particular bankruptcy to pursue collection of the tax and has failed to do so before the next bankruptcy filing.* *Id.,* 191 B.R. at 871–74. (emphasis added) (footnotes omitted). *See also In re Zecco,* 211 B.R. 109, 110–13 (Bankr.D.Mass.1997).

While the government asserts that it is entitled to a credit for the full 180 days after each petition, this Court disagrees. The government is clearly entitled to a 180 day credit in each case where the time between a dismissal and a subsequent petition exceeds 180 days. However, where the time between the dismissal of one case and the filing of a subsequent case is less than 180 days, this Court will allow credit only for the actual number of days elapsed. To allow credit for the entire 180 days would permit the government to double count the days remaining on the 180 day period until it expires during the pending bankruptcy case.

*G*

*Conclusions*

In computing whether the IRS' tax claim for the years 1991 and 1992 falls within the scope of the § 507(a)(8)(A)(ii) "look back" period in the Debtor's present case, his fourth case, this court would note that the Debtor's First Petition was filed on January 21, 1994. If this had been the only Petition that the Debtor had filed, the 1991 income taxes, last due on April 15, 1992, and the Debtor's 1992 income taxes, last due on April 15, 1993, would have clearly fallen within the three year, § 507(a)(8)(A)(ii), "look back" period, which would have been January 21, 1991.

The Debtor's Second Petition was filed on September 19, 1994. The Debtor's first case was dismissed on April 26, 1994. Thus, only 146 days elapsed between the Order dismiss-

ing the first case and the filing of the second Petition. Accordingly, the IRS did not have the full benefit of the 6 month period after the first case was dismissed to collect the 1991 and 1992 income taxes, as provided by § 6503(h).

The Debtor's third Petition was filed on August 30, 1995. The Debtor's second case was dismissed on March 10, 1995. Thus, only 173 days elapsed between the Order dismissing the second case, and the filing of the third Petition. Accordingly, the IRS also did not have the full benefit of the 6 month period after the second case was dismissed to collect the 1991 and 1992 income taxes, as provided by § 6503(h).

Finally, the Debtor's Fourth Petition was filed on September 13, 1996. The Debtor's third case was dismissed on November 3, 1995. Thus, 314 days elapsed between the Order dismissing the third case and the filing of the fourth Petition. Accordingly, the IRS had the full benefit of the 6 month or 180 day period after the third case was dismissed to collect the 1991 and 1992 income taxes pursuant to § 6503(h), plus an additional 134 days (314 days less 180 days = 134 days).

Based upon the foregoing, the days elapsed between the dismissal of each of the prior three cases, and the time a subsequent Petition was filed may be summarized as follows:

| Date First Case Dismissed | Date Second Petition Filed | Days Elapsed |
|---|---|---|
| 4/26/94 | 9/19/94 | 146 |

| Date Second Case Dismissed | Date Third Petition Filed | Days Elapsed |
|---|---|---|
| 3/10/95 | 8/30/95 | 173 |

| Date Third Case Dismissed | Date Fourth Petition Filed | Days Elapsed |
|---|---|---|
| 11/3/95 | 9/13/96 | 314 |

The court has constructed the following chart to determine the § 507(a)(8)(A)(ii) "look back" priority period in a bankruptcy case where the debtor has filed two or more prior bankruptcy petitions, and, thus, has had the protection of the § 362(a) automatic stay thereby staying the collection of prepetition taxes by the Internal Revenue Service:

| Time Computation | | | | | |
|---|---|---|---|---|---|
| Petition | Date Case Filed | Date Case Dismissed | Days Case Pending | Days between Dismissal Order and next Petition | Total |
| 1st | 1/21/94 | 4/26/94 | 95 days | 146 days | 241 days |
| 2nd | 9/19/94 | 3/10/95 | 171 days | 173 days | 344 days |
| 3rd | 8/30/95 | 11/3/95 | 65 days | 180 days[9] | 245 days |
| 4th | 9/13/96 | n/a | n/a | n/a | n/a |
| Total | | | 331 | 499 days | 830 days |

9. This column represents the number of days included in the 6 month tolling period between the cases. The number of days between the Dismissal of the Third Case on November 3, 1995, and the Petition commencing the Fourth Case on September 13, 1996 was 314. However, pursuant to § 6503(b), the IRS is given a maximum of an additional six months, or 180 days after the Dismissal of a case to collect unpaid taxes. Thus, there were 134 days between the dismissal of the third case and the filing of the fourth Petition when the statute of limitations resumes running.

## Computation of Priority Date

The date of the Debtor's present and Fourth Petition was September 13, 1996. The three year § 507(a)(8)(A)(i) "look back" period goes back to September 13, 1993, if this were the Debtor's first and only Petition, as there would be no issue of tolling. The Debtor's 1991 income tax liability was last due on April 15, 1992, while the Debtor's 1992 income tax liability was last due on April 15, 1993, if there were no extensions. If the Debtor had not filed three prior Petitions, and his Petition filed in the present Case on September 13, 1996 were his first and only Petition, the Debtor's 1991 and 1992 income tax liabilities could not be afford unsecured priority status pursuant to § 507(a)(8)(A)(i), as they would be last due before the three year, "lookback" date of September 13, 1993, or 1095 days (3 years X 365 days) prior to the Petition date of September 13, 1996.

However, based on *Montoya,* 965 F.2d 554, *supra,* because this is the Debtor's fourth Petition, the Court has concluded that the total of all time periods that the Debtor's three prior cases were pending, shall toll the three year period found in § 507(a)(8)(A)(i). This would be 331 days. The IRS shall also have the benefit of the six month, or 180 day tolling period provided by § 6503(h) after each prior case was dismissed, or if the intervening time period was less than 180 days the actual number of days elapsed. However, based on *Dodson,* 191 B.R. 869, when the actual number of days between the date of the dismissal of a prior case and the date that a subsequent Petition is filed, is more than six months in length, that is any six month period actually ran after a prior case is dismissed, those days, exceeding 180 days between the date of dismissal of a prior case and the filing of a subsequent case, shall be credited to the Debtor, and that as to those days in excess of 180 days, the statute of limitations on the collection of nondischargeable federal tax liability will resume running. Thus, the tolling period shall be computed as follows:

### Computation of date 1991 and 1992 Income Tax Returns of Debtor were last due after adding time that collection of taxes was tolled per § 108(c) and § 6503(h)

| | Days |
|---|---|
| 1. Total number of days three previous cases were pending which tolled time to collect 1991 and 1992 income taxes per § 108(c) and § 6503(h). | 331 |
| 2. Total number of Days between: | |
| 1. Dismissal of First case and filing of second case: 146 days. IRS is not entitled to tolling as to entire 180 day period per § 108(c) and § 6503(h). | 146 |
| 2. Dismissal of Second case and filing of third case: 173 days. IRS is not entitled to tolling as to entire 180 day period per § 108(g) and § 6503(h). | 173 |
| 3. Dismissal of third case and filing of fourth case: 314 days. IRS is entitled to tolling as to entire 180 day period per § 108(c) and § 6503(h); however as to the additional 134 days that accrued after the 180 day period ran, the statute of limitations on collection of the taxes resumed running. | 180 |
| Total days statute tolled per § 108(c) and § 6503(h). | 830 |

Based on an additional 830 days that were tolled, the last date for which federal income tax returns were due by the Debtor for the tax years 1991 and 1992 is computed as follows:

1. The 1991 tax return was due on 4/15/92 plus 830 days.

> 365 days = 4/15/93
> 365 days = 4/15/94
> <u>100 days</u> = 7/25/94
> 830 days

Thus, the date for which the 1991 tax return was last due is extended 830 days from April 15, 1992 to July 24, 1994.

2. The 1992 tax return was last due on 4/15/93, plus 830 days.

> 365 days = 4/15/94
> 365 days = 4/15/95
> <u>100 days</u> = 7/24/95
> 830 days

Thus, the date for which the 1992 tax return was last due is extended 830 days from April 15, 1993 to July 24, 1995.

The three year "look back" date pursuant to § 507(a)(8)(A)(i), based on the Debtor's Fourth Petition filed on September 13, 1996, is September 13, 1993. Accordingly, the after adding the 830 days that were tolled, the 1991 tax return, was last due on July 24, 1994, and the 1992 tax return was last due on July 24, 1995. Thus, the tax returns for both 1991 and 1992 income tax returns were last due after three years before the date of the filing of the Petition. Therefore, the claim of the IRS as to the Debtor's 1991 and 1992 is entitled to unsecured priority status pursuant to § 507(a)(8)(A)(ii).

The Court having reviewed the Complaint and Answer filed herein and the Motion for Summary Judgment by the Defendant, together with the supporting legal memoranda and, all of the relevant papers and documents of record, and having taken into consideration all admitted facts, the Court concludes that no genuine issue of material fact exists pursuant to Fed.R.Civ.P. 56(c) in that the parties have no dispute as to the filing and dismissal dates of the Debtor's our bankruptcy petitions in computing the § 507(a)(8)(A)(i) priority claim of the Defendant, and that the Defendant is entitled to a Summary Judgment as a matter of law.

It is therefore,

ORDERED, ADJUDGED, AND DECREED, that the Defendant's Motion for Summary Judgment should be, and is hereby granted. And it is further,

ORDERED, ADJUDGED, and DECREED that the Debtor's federal income tax liability and interest thereon for the 1991 and 1992 tax years constitute unsecured priority tax claims versus the Debtor's Chapter 13 estate pursuant to § 507(a)(8)(A)(i).

The Clerk shall set forth this Judgment on a separate document pursuant to Fed. R.Bk.P. 9021.